## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Avraham Goldstein | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| City University of New York, and | ) | Civil Action Case No. 1:25-cv-475 |
| | ) | |
| Borough of Manhattan Community College, City University of New York | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### COMPLAINT FOR DAMAGES AND JURY DEMAND

COMES NOW Avraham Goldstein ("Plaintiff"), by and through his attorneys working with the National Jewish Advocacy Center, Inc., and alleges the following against Borough of Manhattan Community College and the City University of New York (collectively, "Defendants"):

### PARTIES

1.     Plaintiff, Avraham Goldstein is an employee of Defendants residing in New York, New York.

2.     City University of New York (CUNY) is a public university system organized under the laws of the State of New York, with its principal place of business at 205 East 42nd Street, New York, NY 10017. CUNY oversees 25 campuses, employs over 30,000 individuals, and transacts business throughout the City and State of New York by providing higher education services and employing faculty, administrative staff, and other personnel.

3.     CUNY has at all relevant times been an "employer" covered by Title VII of the Civil Rights Act of 1964, NYLL §740, the New York State Human Rights Law (NYSHRL), and the New York City Human Rights Law (NYCHRL).

1

4.      Borough of Manhattan Community College (BMCC) is a public institution and a constituent college of CUNY, organized under the laws of the State of New York, with its principal place of business at 199 Chambers Street, New York, NY 10007. BMCC employs over 1,000 employees and transacts business in New York County by providing higher education services and employing faculty, administrative staff, and other personnel.

5.      BMCC has at all relevant times been an "employer" covered by Title VII of the Civil Rights Act of 1964, NYLL §740, the New York State Human Rights Law (NYSHRL), and the New York City Human Rights Law (NYCHRL).

## JURISDICTION AND VENUE

6.      Jurisdiction is founded upon 28 U.S.C. § 1331 and principles of supplemental jurisdiction under 28 U.S.C. §1367.

7.       Plaintiff filed a Charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Right to Sue letter dated October 18, 2024.  Accordingly, this lawsuit is timely.

8.      Plaintiff did not file with the New York State Division on Human Rights or City Commission on Human Rights, and accordingly jurisdiction for NYCHRL claims rests with this Court pursuant to the New York City Admin. Code §8-502(a).

9.      Within ten (10) days of commencing this lawsuit, Plaintiff shall serve true and correct copies of this Complaint upon designated representatives for the New York City Commission on Human Rights and Corporation Counsel pursuant to New York City Admin. Code §8-502(c).

10.     The New York City Human Rights Law claims herein were filed within three (3) years of the alleged unlawful discriminatory practice and/or harassment and thus is timely within the statute of limitations.

11.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because Defendants are subject to the court's personal jurisdiction within the Southern District of New York with respect to this action.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

12.     Plaintiff has alleged claims of discrimination and retaliation pursuant to Title VII with the EEOC.

13.     Plaintiff has received his Notice of Right to Sue letter dated October 18, 2024, from the EEOC regarding his complaints of discrimination/retaliation for the alleged Title VII claims herein within ninety (90) days of the filing of this Complaint.

## NATURE OF ACTION

14.     This is an action for declaratory and injunctive relief, as well as compensatory and punitive damages, arising from Defendants' violations of Title VII of the Civil Rights Act of 1964, as amended, the New York State Human Rights Law (NYSHRL), and the New York City Human Rights Law (NYCHRL).

15.     Defendants engaged in discriminatory and retaliatory practices by conducting a retaliatory investigation based on patently false allegations, against Plaintiff while failing to adequately investigate Plaintiff's own complaints of discriminatory and hostile treatment, thereby applying discriminatory standards for investigation and perpetuating a hostile work environment.

16.     Defendants actions, including but not limited to failing to adequately investigate Plaintiff's complaints of discrimination, launching and perpetuating a fifteen month investigation

of facially baseless claims, failing to provide Plaintiff with due process during the investigative process, denying Plaintiff's application to be appointed to a university committee, and allowing discriminatory treatment to persist, were motivated by Plaintiff's protected characteristics and/or in retaliation for Plaintiff's opposition to discriminatory practices.

17.    Defendants' disparate treatment of Plaintiff in how investigations were handled reflects a pattern of discrimination that created and reinforced a hostile work environment, undermined Plaintiff's professional standing, and violated Plaintiff's rights under federal, New York State, and New York City anti-discrimination laws.

18.    Upon information and belief, at all pertinent times, Defendants acted or failed to act by and through their duly authorized agents, servants, representatives, partners, managers, supervisors and employees, who conducted themselves within the scope and course of their employment, with intentional malice and/or with reckless disregard to Plaintiff's federal, New York State and New York City statutory rights.

19.    As a result of Defendants' unlawful actions, Plaintiff has suffered emotional distress, reputational harm, and damage to professional opportunities, in addition to economic losses.

20.    Plaintiff seeks relief to remedy the ongoing harm caused by Defendants' conduct, including equitable relief to prevent further violations, reinstatement of Plaintiff's professional standing, and monetary damages to compensate for harm suffered.

## THE FACTS
### Background

21.    Plaintiff has been employed by Defendants BMCC and CUNY as an Assistant Professor in the BMCC CUNY Mathematics Department since in or about 2006.

22.    Plaintiff is Jewish by ethnicity and religion.

23.    Plaintiff is Israeli by Nationality and citizenship.

24.    Plaintiff is a Zionist by dint of his religion and his national origin.

25.     Zionism is the movement for the re-establishment, and now the development and protection, of a sovereign Jewish nation in its ancestral homeland. Zionism is not just a political movement; for the vast majority of Jewish people across time and space, including Plaintiff, Zionism is and always has been an integral part of their Jewish, often religious, identities.

26.    For thousands of years, Jews across the world, including Plaintiff, have prayed to God at least three times a day for a safe return to Zion. The Pentateuch itself references this ancient Jewish hope while the Prophets and Writings repeatedly record this ambition. Over half of the biblical commandments are specifically tied to Israel, and belief in/hope for the return to Zion is part of the 13 Principles of Jewish Faith.

**Defendants Host Discriminatory, Antisemitic Poster Display**

27.    On or about March 15, 2023, Defendants hosted a large poster exhibit on the third floor of BMCC's Main Building in front of Defendants' Office of the Vice President of Student Affairs and Defendants' Women's Resource Center.

28.    Defendants' Women's Resource Center, though its "Social Justice and Equity Center" (SJEC) sponsored this poster exhibit.

29.    The exhibit contained false and defamatory statements about the State of Israel and the Jewish people.

30.    For example, the posters labeled Israel a "colonialist" state, even though Jews have no other state from which they could even launch a "colony."

31.    Defendants' poster exhibit was one part of a three-part program, titled the "Palestinian Solidarity Series."

32.     This program also included a lecture by anti-Israel activist Maryam Shuaib and a screening of the anti-Israel film *Farha*.

33.     Defendants offered students co-curricular transcript credit (CCT) for attending the Farha film screening.

**Plaintiff Opposes Defendants' Unlawful Discrimination**

34.     On or about March 15, 2023, Plaintiff publicly opposed Defendants' antisemitic and discriminatory exhibit by notifying news media about it and by forwarding photos of Defendants' antisemitic exhibit to the S.A.F.E. CUNY X account

35.     On or about March 16, 2023, *UnitedWithIsrael* published an article about Defendants' antisemitic program, entitled "'Horrifying, Antisemitic, Campus-Sponsored' Programs at CUNY; Students Get College Credit for Participating," by Atara Beck.

36.     Plaintiff identifies himself in the article as a director of S.A.F.E. CUNY.

37.     The article describes S.A.F.E. CUNY as a non-governmental and nonprofit organization that advocates for Zionist Jews systemically discriminated against and excluded" at CUNY.

38.     Plaintiff is quoted in the article, discussing that the discriminatory and upsetting nature of Defendants' antisemitic exhibits and events, and how he felt that they created an unsafe environment for Jewish students and faculty.

39.     Plaintiff's remarks in the article are denoted by quotation marks.

40.     Plaintiff is not the only person quoted in the article.

41.     The article identifies Nadia Saleh as BMCC's SJEC Program Coordinator.

42.     The article refers to Nadia Saleh as an anti-Israel activist.

43.     The article includes a "tweet" from an account under the name Nadia Saleh of a

6

photo and quote attributed to Denis McDonough [President Obama's 2013-2017] White House Chief of Staff.

44.    The article does not attribute to Plaintiff – or anyone else - the identification of Nadia Saleh as the SJEC Program Coordinator.

45.    At the time the UnitedWithIsrael article was published, Defendants' public website identified Nadia Saleh as its SJEC Program Coordinator.

46.    The article does not attribute to Plaintiff – or anyone else – the description of Nadia Saleh as an anti-Israel activist.

47.    The article does not attribute to Plaintiff Nadia Saleh's alleged dissemination of the "tweet" of the photo and quote attributed to Denis McDonough, White House Chief of Staff.

48.    At the time Plaintiff was interviewed for *UnitedWithIsrael's* March 16, 2023 article, Plaintiff and Nadia Saleh did not know each other.

49.    At the time Plaintiff was interviewed for UnitedWithIsrael's March 16, 2023 article, he was not a subscriber to Nadia Saleh's alleged twitter feed that contained the photo and quote attributed to White House Chief of Staff Denis McDonogh.

50.    At the time that Plaintiff was interviewed by *UnitedWithIsarel*, he was not aware of Nadia Saleh's alleged involvement in Defendants' discriminatory antisemitic exhibit.

51.    Plaintiff   did not provide Naida Saleh's alleged "tweet" of the photo and quote attributed to Denis McDonough, White House Chief of Staff.

52.    Plaintiff did not make any statements at all about Nadia Saleh to *UnitedWithIsrael.*

**Plaintiff Asks Defendants to Provide Anti-Discrimination Education on Jewish Indigeneity in Israel**

53.    On or about March 21, 2023, Plaintiff emailed every person listed on Defendants' BMCC SJEC website asking that it sponsor anti-discrimination education on Jewish Indigeneity

in Israel.

54.     Defendants' BMCC SJEC website suggests that responses are guaranteed if submitted at least two weeks in advance because it states that responses cannot be guaranteed to be acted upon if sent less than 14 days in advance.

55.     Defendants BMCC SJEC have not responded to Plaintiff's request for anti-discrimination education as of the date of this complaint.

**Plaintiff is Retaliatorily, Falsely, Publicly Defamed**

56.     The next day, on March 22, 2023, false and defamatory reviews accusing Plaintiff of racism against Muslims and Palestinians appeared on RateMyProfessor.com.

57.     The false and defamatory reviews referenced non-existent courses that Plaintiff does not teach or had not taught in the prior decade.

58.     Prior to that day, Plaintiff, over the course of nearly two decades of teaching at Defendants' college campuses, been accused of being a racist.

59.     Plaintiff is not a racist and has never engaged in racism against Muslims, Palestinians, or anyone else.

**Plaintiff Complains to Defendants about Retaliatory, Public, False Defamation and Demands Investigation**

60.     On or about   March 26, 2023, Plaintiff   wrote Defendant BMCC's President Munroe and Chief Diversity Officer Levy  requesting immediate investigation into the retaliatory, public false defamation, noting that the March 22, 2023 false and defamatory reviews were posted exactly one day after Plaintiff's March 21, 2023 request to Defendants' BMCC Social Justice and Equity Center (SJEC) to provide anti-discrimination education on Jewish Indigeneity in Israel.

61.     On or about April 4, 2023, Plaintiff met with Defendants' BMCC Office of Compliance and Diversity Deputy Director of Diversity and Title IX Compliance, Theresa Wade.

62.     During the meeting, Wade asked if Plaintiff suspected specific individuals may be responsible for the reviews. Plaintiff reiterated the suspicious timing of the false and defamatory reviews following precisely one day after Plaintiff privately asked Defendants BMCC SJEC to sponsor anti-discrimination education on Jewish indigeneity in Israel, and suggested investigating the BMCC SJEC staff, as indicated in Plaintiff's March 26, 2023 complaint.

63.     Wade assured Plaintiff that the matter would be investigated, promising an update within two to three weeks.

64.     On or about April 24, 2023, Plaintiff emailed Wade for updates on the investigation and were informed it was under review, with a promise of follow-up.

65.     On or about June 9, 2023, over two months after Plaintiff complained to Defendants about the retaliatory false, defamatory and discriminatory statements about him on RateMyProfessor.com and demanded an investigation, Defendants' Office of Compliance and Diversity informed Plaintiff that no individuals had been interviewed.

**Defendants' BMCC SJEC Sponsors and Signs Retaliatory, Antisemitic Petition**

66.     On or about April 28, 2023, Defendants' BMCC SJEC co-sponsored and signed a retaliatory online petition, describing Plaintiffs' opposition to Defendant's discriminatory, antisemitic poster display as a "Zionist tactic".

67.     The online petition describes Plaintiff's request for anti-discrimination education on Jewish indigeneity in Israel in the following manner: "Zionist groups on and off campus are now calling to host their own series of events on Zionism as part of an intimidation tactic."

**Plaintiff Complains to Defendants about their Retaliatory, Discriminatory Petition**

68.     On or about May 5 and May 17, 2023, Plaintiff complained to Defendants about the retaliatory, discriminatory, antisemitic petition sponsored by Defendants BMCC SJEC.

69.     On or about June 9, 2023, Defendants' Office of Compliance and Diversity informed Plaintiff that no individuals had been interviewed in connection with Plaintiff's complaint about the discriminatory, antisemitic petition sponsored and signed by Defendants' BMCC SJEC.

**Plaintiff Requests Appointment to Defendants' Advisory Council**

70.     On or about May 11, 2023, Defendant CUNY announced the formation of an Advisory Council on Jewish Life, in the face of numerous sustained complaints of systemic antisemitism at Defendants' campuses.

71.     On or about May 11, 2023, SAFE CUNY asked Defendant CUNY's Chancellor Rodriguez to appoint members of SAFE CUNY to Defendants' newly announced Advisory Council on Jewish Life.

72.     As of the date of the filing of this complaint, Defendants have not appointed Plaintiff to its Advisory Council on Jewish Life.

73.     On information and belief, as of the date of the filing of this complaint, Defendants have not appointed any member of SAFE CUNY to their Advisory Council on Jewish Life.

**Plaintiff Submits Complaint of Antisemitic Discrimination to Defendants' University-Wide Online Portal**

74.     On or about, June 4, 2023, Plaintiff filed a complaint of discrimination through Defendant CUNY's online "portal" (Portal), referencing Defendants' March 15, 2023 antisemitic poster exhibit, the false, defamatory and retaliatory RateMyProfessor posts, Plaintiffs' unanswered request for anti-discrimination education on Jewish Indigeneity in Israel, and Defendants' April 28, 2023 antisemitic online petition.

75.     Upon information and belief, on June 4, 2023, Defendant CUNY's online portal was run by its Title IX Coordinator Saly Abd Alla.  https://www1.cuny.edu/sites/title-

ix/?post_type=campus_profile&p=58

76.    Upon information and belief, Defendant CUNY's employee Alla was previously a Director at the Council on American-Islamic Relations, Minnesota (CAIR-MN). https://www.cair.com/cair_in_the_news/on-the-job-with-saly-abd-alla/

77.    CAIR was named by the U.S. Department of Justice as an unindicted co-conspirator in the 2008 U.S. v Holyland Foundation case – the largest terror finance case in American history – which resulted in a conviction on all 108 counts. https://archives.fbi.gov/archives/news/stories/2008/november/hlf112508;

https://www.adl.org/resources/backgrounder/council-american-islamic-relations-cair;

https://m.flsenate.gov/session/bill/2024/1209/analyses/h1209a.sac.pdf

78.    Following this terrorism financing trial, the FBI severed relations with CAIR. https://www.adl.org/resources/backgrounder/council-american-islamic-relations-cair;

https://m.flsenate.gov/session/bill/2024/1209/analyses/h1209a.sac.pdf)

79.    At least five CAIR board members or staff have been convicted or plead guilty to terrorism related charges, at least one of whom was deported from the United States. https://m.flsenate.gov/session/bill/2024/1209/analyses/h1209a.sac.pdf.    The United Arab Emirates also designated CAIR as a terrorist entity in 2014. https://m.flsenate.gov/session/bill/2024/1209/analyses/h1209a.sac.pdf.

80.    In 2023, President Biden disavowed CAIR after its director declared that he "was happy" about October 7th.  https://m.flsenate.gov/session/bill/2024/1209/analyses/h1209a.sac.pdf.

81.    Members of CAIR's leadership have publicly called for "Zionists" — Jews such as Plaintiff, who believe Israel has a right to exist — to be banned from antiracist and interfaith work. https://www.adl.org/resources/backgrounder/council-american-islamic-relations-cair.    CAIR

leaders have also called Jews 'cursed,' and supporters of Israel 'the enemies of God and humanity.' https://www.investigativeproject.org/8002/ipt-exclusive-cair-leader-consequence-free-anti; https://x.com/HassanShibly/status/496006231036006400.

82.    CUNY's policy states that all Portal complaints shall be resolved within forty days of their filing.

83.    As of the date of this complaint, Plaintiff has not received a response to his June 4, 2023 Portal complaint.

**Defendants Retaliatorily Announce to Plaintiff That He is Under Investigation**

84.    On or about July 13, 2023, Plaintiff was notified by Defendants for the first time that he was under investigation for a complaint purportedly filed four months earlier by Defendants' BMCC SJEC Program Coordinator Nadia Saleh for his public March 2023 opposition to Defendants' discriminatory and antisemitic poster display.

85.    Defendants' July 13, 2023 notice stated that it was investigating Plaintiff for Ms. Saleh's claims that he contributed to publications which wrote false information about Saleh based on her ethnicity and religion, and then shared these publications on social media.

86.    It is plain on the face of the news articles that Plaintiff was not the source of any information about Ms. Saleh.

87.    It is plain on the face of the news articles that they do not contain statements about Ms. Saleh's ethnicity or religion.

88.    Upon information and belief, Defendants did not contact the authors of the publications to inquire as to the sources of the allegedly defamatory statements. One such call could have confirmed the baselessness of the allegations.

89.    Upon information and belief, Defendants' targeted Plaintiff on July 13, 2023, pursuing facially baseless allegations, in retaliation for his filing a June 4, 2023 complaint of

discrimination via the CUNY university wide portal.

90.     On information and belief, Defendants have targeted other employees by pursuing facially baseless allegations in retaliation for complaining about antisemitic treatment.

91.     Defendants' retaliatory investigation of Defendant remained open for approximately 15 months.

92.     On or about May 13, 2024, Defendants notified Plaintiff that his complaints of antisemitic discrimination regarding the public, false, defamatory and discriminatory statements about Plaintiff that appeared on RateMyProfessor.com, the failure of BMCC SJEC to respond to his request for anti-discrimination education on Jewish indigeneity in Israel, and the antisemitic online petition sponsored by Defendants' BMCC SJEC had not been substantiated.

93.     On or about August 12, 2024, Defendants notified Plaintiff that Nadia Saleh's complaints that Plaintiff engaged in ethnic and religious discrimination by publicly opposing Defendants' discriminatory, antisemitic poster exhibit, had not been substantiated.

## FIRST CLAIM
### (Religion/National Origin Discrimination Arising Under Title VII)

94.     Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

95.     This claim is premised upon Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e, et seq., which prohibits employment discrimination based on, inter alia, race, religion, and national origin.

96.     At all relevant times, Plaintiff was an "employee" under Title VII, 42 U.S.C. § 2000e(f).

97.     CUNY is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

98.     CUNY has been engaged in and intends to engage in a pattern of discrimination

against Jewish and/or Israeli employees.

99.    CUNY has been sued recently regarding its treatment of Jewish students and employees and is in further receipt of multiple complaints regarding such treatment.

100.    Following multiple Title VI complaints by Jewish students for antisemitism, CUNY entered into a voluntary agreement with the US Department of Education.

101.    Upon information and belief, CUNY discriminated against Plaintiff when CUNY imposed disparate treatment, harassed and otherwise treated Plaintiff unfavorably as compared to similarly situated, nonprotected class coworkers subject to the same supervisor(s), manager(s), procedures and rules.

102.    BMCC is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

103.    BMCC has been engaged in and intends to engage in a pattern of discrimination against Jewish and/or Israeli employees.

104.    Defendants  failed to conduct a good faith, reasonable investigation of  Plaintiff's reports of the antisemitic, anti-Israeli treatment he endured during his employment.

105.    Defendants failed to adequately respond to Plaintiff's reports of antisemitic, anti-Israeli treatment he endured during his employment.

106.    Upon information and belief, Defendants have conducted good faith, reasonable investigations of complaints of discrimination from Plaintiff's non-Jewish, non-Israeli counterparts.

107.    Upon information and belief, Defendants have adequately responded to complaints of discrimination by its non-Jewish, non-Israeli employees.

108.    Defendants targeted Plaintiff in retaliation for his complaints of discrimination by perpetuating the investigation of facially baseless allegations against Plaintiff.

14

109.    As a direct and proximate result of Defendants' discriminatory actions, Plaintiff suffered emotional distress, humiliation, and embarrassment.

110.    The psychological and emotional consequences of the Defendants' actions continue to date, and, upon information and belief, will continue into the future.

111.    As a direct and proximate result of Defendants' discriminatory actions, Plaintiff was not appointed to the Advisory Council on Jewish Life and has suffered professional setback and monetary loss.

**SECOND CLAIM**
**(Religion/National Origin Discrimination Arising Under the New York City Human Rights Law)**

112.    Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

113.    New York City Human Rights Law, N.Y. City Admin. Code § 8-101, et seq., prohibits disparate treatment because of a person's religions and national origin, including their ancestry.

114.    Plaintiff is a "person" under §8-102(1) of the New York City Human Rights Law.

115.    CUNY is an "employer" for purposes of the New York City Human Rights Law under New York City Administrative Code § 8-102(5).

116.    CUNY's discriminatory and disparate treatment of Plaintiff because he is Jewish and Israeli created a hostile work environment in violation of the NYCHRL.

117.    CUNY discriminated against, treated disparately, harassed, and otherwise treated Plaintiff unfavorably as compared to similarly situated, nonprotected class coworkers subject to the same supervisor(s), manager(s), procedures and rules, by, inter alia, (1) ignoring and failing to respond to Plaintiff's complaints regarding Defendants' antisemitic, anti-Israeli actions, (2) pursuing and unreasonably prolonging a facially baseless, retaliatory investigation against

15

Plaintiff.

118.    CUNY's actions were done intentionally or with reckless indifference to Plaintiff's statutorily protected New York City rights.

119.    As a direct and proximate result of CUNY's actions, Plaintiff suffered emotional distress, humiliation, and embarrassment. The psychological and emotional consequences of CUNY's actions continue to date, and, upon information and belief, will continue into the future.

120.    BMCC is an "employer" for purposes of the New York City Human Rights Law under New York City Administrative Code § 8-102(5).

121.    BMCC's discriminatory and disparate treatment of Plaintiff because he is Jewish and Israeli created a hostile work environment in violation of the NYCHRL.

122.    BMCC discriminated against, treated disparately, harassed, and otherwise treated Plaintiff unfavorably as compared to similarly situated, nonprotected class coworkers subject to the same supervisor(s), manager(s), procedures and rules, by, inter alia, (1) ignoring and failing to respond to Plaintiff's complaints regarding the antisemitic, anti-Israeli treatment he endured, (2) pursuing and unreasonably prolonging a retaliatory, facially baseless investigation against Plaintiff.

123.    BMCC's actions were done intentionally or with reckless indifference to Plaintiff's statutorily protected New York City rights.

124.    As a direct and proximate result of BMCC's actions, Plaintiff suffered emotional distress, humiliation, and embarrassment. The psychological and emotional consequences of BMCC's actions continue to date, and, upon information and belief, will continue into the future.

125.    As a direct and proximate result of Defendants' discriminatory actions, Plaintiff was not appointed to the Advisory Council on Jewish Life and suffered professional setback and

monetary loss.

### THIRD CLAIM
### (Retaliation for Protected Activity Arising Under Title VII)

126.    Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

127.    This claim is premised upon Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e, which prohibits employers from taking materially adverse employment actions in response to an employee's participation in a protected activity, including but not limited to an employee's opposition to an action taken by its employer, which the employee considers to be discriminatory.

128.    At all relevant times, Plaintiff was an "employee" under Title VII, 42 U.S.C. §2000e(f).

129.    CUNY is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

130.    Plaintiff opposed CUNY's unlawful, discriminatory employment practices and engaged in protected activity under Title VII.

131.    CUNY's retaliatory treatment of Plaintiff because of his protected activity in advancing his Title VII rights was in violation of, inter alia, Title VII, 42 U.S.C. § 2000e-3.

132.    CUNY retaliated against, harassed, and otherwise treated Plaintiff unfavorably as compared to similarly situated, nonprotected class coworkers subject to the same supervisor(s), manager(s), procedures and rules, by, inter alia making public false and defamatory statements about Plaintiff, fabricating complaints and initiating and perpetuating a bad-faith investigations of facially baseless claims against Plaintiff in retaliation for his reports of antisemitic, anti-Israeli treatment during the course of his employment .

133.    CUNY's subjection of Plaintiff to such adverse and unfavorable employment actions in retaliation for his protected activity caused Plaintiff to fear working as a professor for

Defendants.

134.    CUNY's actions were done intentionally and/or with reckless indifference to Plaintiff's federally protected Title VII rights.

135.    BMCC is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

136.    Plaintiff opposed BMCC's unlawful, discriminatory employment practices and engaged in protected activity under Title VII.

137.    BMCC's retaliatory treatment of Plaintiff because of his protected activity in advancing his Title VII rights was in violation of, inter alia, Title VII, 42 U.S.C. § 2000e-3.

138.    BMCC retaliated against, harassed, and otherwise treated Plaintiff unfavorably as compared to similarly situated, nonprotected class coworkers subject to the same supervisor(s), manager(s), procedures and rules, by, inter alia, making public false and defamatory statements about Plaintiff, fabricating complaints and initiating and perpetuating a bad-faith investigation of facially baseless claims against Plaintiff in retaliation for his reports of antisemitic, anti-Israeli treatment during the course of his employment.

139.    BMCC's subjection of Plaintiff to such adverse and unfavorable employment actions in retaliation for his protected activity caused Plaintiff to fear working as a professor for Defendants.

140.    BMCC's actions were done intentionally and/or with reckless indifference to Plaintiff's federally protected Title VII rights.

141.    As a direct and proximate result of Defendants' actions, Plaintiff suffered emotional distress, humiliation, and embarrassment. The psychological and emotional consequences of the Defendants' actions continue to date, and, upon information and belief, will continue into the future.

142.    As a direct and proximate result of Defendants' discriminatory actions, Plaintiff was not appointed to the Advisory Council on Jewish Life and has suffered professional setback and monetary loss.

## FOURTH CLAIM
**(Protected Activity Retaliation Arising Under the New York City Human Rights Law)**

143.    Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

144.    New York City Human Rights Law, N.Y. City Admin. Code § 8-101, et seq., prohibits retaliation because of an employee's protected activity.

145.    Plaintiff is a "person" under §8-102(1) of the New York City Human Rights Law.

146.    CUNY is an "employer" for purposes of the New York City Human Rights Law under New York City Administrative Code § 8-102(5).

147.    CUNY retaliatory treatment of Plaintiff because of his protected activity as an employee advancing his NYCHRL rights was in violation of, inter alia, New York City Human Rights Law, § 8-107.

148.    CUNY discriminated and retaliated against, treated disparately, harassed, and otherwise treated Plaintiff unfavorably as compared to similarly situated, nonprotected class coworkers subject to the same supervisor(s), manager(s), procedures and rules, by, inter alia, making public false and defamatory statements about Plaintiff, fabricating complaints and initiating and perpetuating a bad-faith investigations of facially baseless claims against Plaintiff in retaliation for his reports of antisemitic, anti-Israeli treatment during the course of his employment.

149.    CUNY's subjection of Plaintiff to such adverse employment actions in retaliation for his protected activity caused Plaintiff to fear working for Defendants.

150.    Upon information and belief, CUNY's actions were done intentionally or with reckless indifference to Plaintiff's statutorily protected New York City rights, entitling him to

punitive damages under the New York City Human Rights Law.

151.    BMCC is an "employer" for purposes of the New York City Human Rights Law under New York City Administrative Code § 8-102(5).

152.    BMCC's retaliatory treatment of Plaintiff because of his protected activity as an employee advancing his NYCHRL rights was in violation of, inter alia, New York City Human Rights Law, § 8-107.

153.    BMCC discriminated and retaliated against, treated disparately, harassed, and otherwise treated Plaintiff unfavorably as compared to similarly situated, nonprotected class coworkers subject to the same supervisor(s), manager(s), procedures and rules, inter alia, making public false and defamatory statements about Plaintiff, fabricating complaints and initiating and perpetuating a bad-faith investigations of facially baseless claims against Plaintiff in retaliation for his reports of antisemitic, anti-Israeli treatment during the course of his employment.

154.    BMCC's subjection of Plaintiff to such adverse employment actions in retaliation for his protected activity caused Plaintiff to fear working for Defendants.

155.    Upon information and belief, BMCC's actions were done intentionally or with reckless indifference to Plaintiff's statutorily protected New York City rights, entitling him to punitive damages under the New York City Human Rights Law.

156.    As a direct and proximate result of intentional and/or reckless Defendants' actions, Plaintiff suffered emotional distress, humiliation, and embarrassment. The psychological, emotional and economic consequences of the Defendants' actions continue to date, and, upon information and belief, will continue into the future.

157.    As a direct and proximate result of Defendants' discriminatory actions, Plaintiff was not appointed to the Advisory Council on Jewish Life and has suffered professional setback

and monetary loss.

**Fifth Claim**
**(Violation of Procedural Due Process)**

158.   Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

159.   Defendant, the City University of New York (CUNY), is a public university and instrumentality of the State of New York. As such, its actions are subject to the Fourteenth Amendment to the United States Constitution.

160.   On or about July 13, 2023, Defendants notified Plaintiff for the first time that nearly four months earlier, on March 20, 2023, Defendants BMCC SJEC employee Nadia Saleh, claimed that he contributed to publications which wrote false information about Saleh based on her ethnicity and religion, and then shared these publications on social media.

161.   The lack of timely and adequate notice deprived Plaintiff of the opportunity to understand the claims against him, gather evidence, and prepare a meaningful response.

162.   Defendant's actions of failing to provide timely and specific notice violated Plaintiff's procedural due process rights as guaranteed under the Fourteenth Amendment to the United States Constitution.

163.   Plaintiff has a substantial liberty interest in his employment and professional reputation.

164.   Those interests were at stake during the investigation, and Defendant's actions directly infringed upon those interests without providing constitutionally mandated due process protections.

165.   As a direct and proximate result of Defendant's actions, Plaintiff suffered harm, including emotional distress.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief jointly and severally as against all of

the Defendants:

1. Award compensatory damages in an amount to be determined at trial:

2. Award punitive damages in an amount to be determined at trial:

3. Disbursements, costs and attorneys' fees; and

4. For such other further relief to this Court may seem just and proper.

ALL CONDITIONS PRECEDENT HAVE BEEN PERFORMED OR HAVE OCCURRED
PLAINTIFF DEMANDS TRIAL BY JURY

Dated: January 16, 2025

Respectfully submitted,

National Jewish Advocacy Center, Inc.

By: _____ */s/ Abra Siegel* _____
        Abra Siegel
        666 Harless Place
        West Hempstead, NY 11552
        (800) 269-9895
        abra@njaclaw.org

By: _____ */s/ Lauren Israelovitch* _____
        Lauren Israelovitch
        666 Harless Place
        West Hempstead, NY 11552
        (914) 222-3828
        lauren@njaclaw.org

*Attorneys for Avraham Goldstein*

22