No. 25 CV 00475 (JAV)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AVRAHAM GOLDSTEIN

Plaintiff,

- against -

THE CITY OF NEW YORK, and BOROUGH OF
MANHATTAN COMMUNITY COLLEGE

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE
AMENDED COMPLAINT**

*MURIEL GOODE-TRUFANT*
*Corporation Counsel of the City of New York*

*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Karen K. Rhau*
*Tel: (212) 356-2475*
*Matter #:2025-008310*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

ARGUMENT ................................................................................................................... 5

      POINT I

           PLAINTIFF'S    DISCRIMINATION    CLAIM
           UNDER THE NEW YORK CIVIL RIGHTS LAW
           § 40 AND 40-C FAILS ................................................................... 5

      POINT II

           BOROUGH OF MANHATTAN COMMUNITY
           COLLEGE IS NOT A SUABLE ENTITY ................................................. 5

      POINT III

           PLAINTIFF    FAILS    TO    PLEAD    ANY
           VIOLATION    OF    HIS    CONSTITUTIONAL
           RIGHTS ....................................................................................... 6

           A.    Plaintiff's Procedural Due Process Claim
                Under the Fourteenth Amendment of the
                United States Constitution Fails Because He
                Has    Not    Alleged    Any    Significant
                Deprivation. ............................................................. 6

           B.    Plaintiff's Equal Protection Claim Under the
                Fourteenth Amendment of the United States
                Constitution Fails Because He Has Not
                Plausibly    Alleged    Defendants    Were
                Motivated by Discriminatory Intent ............................... 7

      POINT IV

           PLAINTIFF FAILS TO PLAUSIBLY PLEAD A
           CLAIM OF MUNICIPAL LIABILITY AGAINST
           DEFENDANT UNDER 42 U.S.C. § 1983 ................................................. 9

**Page**

POINT V

THE AMENDED COMPLAINT FAILS TO
STATE A PLAUSIBLE CLAIM UNDER
FEDERAL, STATE, OR LOCAL LAW .................................................. 10

A.    Plaintiff Fails To Plausibly Plead A Claim
      of Disparate Treatment Under Title VII,
      SHRL & CHRL Because of a Failure to
      Allege Adverse Employment Actions or
      Discriminatory Intent. ..................................................... 10

      i.    Adverse Employment Action ........................................... 12

      ii.   Inference of Discrimination ............................................. 13

      iii.  Claims Are Not Covered Under
            Anti-Discrimination Statutes ............................................. 15

B.    Plaintiff Fails to Plausibly Plead A
      Harassment Claim Under the SHRL
      Because He Has Failed to Adequately
      Allege That He was Subjected to the Inferior
      Terms, Conditions, Or Privileges of
      Employment. ..................................................................... 16

C.    Plaintiff Fails to Plausibly Plead a Claim of
      Retaliation Under Title VII, the SHRL or the
      CHRL ................................................................................ 18

      i.    Adverse Employment Actions ........................................... 19

      ii.   Lack of A Causal Connection ........................................... 21

POINT VI

PROTECTED SPEECH CANNOT FORM THE
BASIS OF PLAINTIFF'S CLAIMS ......................................................... 22

CONCLUSION ...................................................................................... 24

## TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                  **<u>Pages</u>**

<u>Appleton v. City of New York</u>,
    Index no. 157849/2017, 2019 N.Y. Misc. LEXIS 1051,
    (Sup. Ct., N.Y. Cty. Mar. 13, 2019)..................................................................................12

<u>Arroyo-Horne v City of NY</u>,
    No. 16-CV-03857 (MKB), 2018 US Dist. LEXIS 151183
    (E.D.N.Y. Sep. 5, 2018)..................................................................................................10

<u>Burgis v. New York City Dep't of Sanitation</u>,
    798 F.3d 63 (2d Cir. 2015)................................................................................................9

<u>Calise v. Casa Redimix Concrete Corp.</u>,
    20 Civ. 7164 (PAE), 2022 U.S. Dist. LEXIS 20962 (S.D.N.Y. Feb. 4, 2022).......................18

<u>Clissuras v. City Univ. of N.Y.</u>,
    359 F.3d 79 (2d Cir. 2004)................................................................................................5

<u>Colon-Regus v. FEGS Health & Human Serv. Sys.</u>,
    12 Civ. 2223 (AT), 2015 U.S. Dist. LEXIS 32027 (S.D.N.Y. Mar. 11, 2015) .....................19

<u>Dolce v. Connetquot Cent. Sch. Dist.</u>,
    24-CV-00622 (HG), 2025 U.S. Dist. LEXIS 67970 (E.D.N.Y. Apr. 9, 2025).........................9

<u>Ellis v. N.Y. Dep't of Educ.</u>,
    No. 19 Civ. 1441 (LAP), 2020 U.S. Dist. LEXIS 42446
    (S.D.N.Y. Mar. 11, 2020) ...............................................................................................13

<u>Finch v. N.Y. State Office of Children & Family Servs.</u>,
    10 CV 9691 (VB), 2012 U.S. Dist. LEXIS 99453 (S.D.N.Y. May 30, 2012).........................5

<u>Foxworth v. Am. Bible Soc'y</u>,
    03 Civ. 3005 (MBM), 2005 U.S. Dist. LEXIS 16105 (S.D.N.Y. Aug. 3, 2005)....................15

<u>Freud v. New York City Dep't of Educ.</u>,
    1:21-cv-2281, 2022 U.S. Dist. LEXIS 54353 (S.D.N.Y. Mar. 25, 2022).........................19, 20

<u>Galabya v. N.Y.C. Bd. of Educ.</u>,
    202 F.3d 636, 640 (2d Cir. 2000)),
    <u>cert. den.</u>, 568 U.S. 1144 (2013) .............................................................................11

<u>Gartenberg v. Cooper Union for the Advancement of Science and Art</u>,
    765 F. Supp. 3d 245 (S.D.N.Y. Feb. 5, 2025)..................................................................23

**Cases**                                                                                    **Pages**

Haijin Cho-Brellis v. NY State Off. of Children & Family Servs.,
    No. 21-CV-1957 (KAM) (JMW), 2022 U.S. Dist. LEXIS 135447
    (E.D.N.Y. July 29, 2022) ..........................................................................................16

Henry v. NYC Health & Hosp. Corp.,
    18 F. Supp. 3d 396 (S.D.N.Y. 2014)........................................................................12

James v. Borough of Manhattan Cmty. College,
    20-cv-10565 (LJL), 2021 U.S. Dist. LEXIS 229173 (S.D.N.Y. Nov. 29, 2021) ....................5

Johnson v. City of New York,
    23-CV-5378, 2024 U.S. Dist. LEXIS 132580 (S.D.N.Y. July 24, 2024)...............................21

Kimble v. Kingston City Sch. Dist.,
    792 F. App'x 80 (2d Cir. 2019) ................................................................................10

Lax v. City Univ. of N.Y.,
    20-3906-cv, 2022 U.S. App. LEXIS 792 (2d Cir. Jan. 11, 2022)...........................................17

Leibowitz v. Cornell Univ.,
    584 F.3d 487 (2d Cir. 2009)......................................................................................14

Littlejohn v. City of New York,
    795 F.3d 297 (2d Cir. 2015)......................................................................................13

Malcolm v. Honeoye Falls Lima Cent. Sch. Dist.,
    483 F. App'x 660 (2d Cir. 2012) ..............................................................................11

Mastromonaco v. Cnty of Westchester,
    779 F. App'x 49 (2d Cir. 2019) ..................................................................................9

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973)................................................................................................11

McGrath v. Arroyo,
    17-CV-1461 (NGG) (RER), 2019 U.S. Dist. LEXIS 133769
    (E.D.N.Y. Aug. 8, 2019)......................................................................................8, 18

McGuinness v. Lincoln Hall,
    262 F.3d 49 (2d Cir. 2001)........................................................................................13

Monclova v City of NY,
    No. 12-CV-3187 (KAM) (RML), 2014 U.S. Dist. LEXIS 138157
    (E.D.N.Y. Sep. 29, 2014)........................................................................................16

**Cases**                                                                                                              **Pages**

Newsome v. IDB Capital Corp.,
    No. 13 CV 6576 (VEC), 2016 U.S. Dist. LEXIS 40754 (S.D.N.Y. 2016) ............................ 13

O'Neill v. City of Auburn,
    23 F.3d 685 (2d Cir. 1994) ..................................................................................................... 6

Piccoli v. Yonkers Bd. of Educ.,
    08-CV-8344 (CS), 2009 U.S. Dist. LEXIS 116153 (S.D.N.Y. Dec. 11, 2009) ................... 6, 7

Preschools of Am. (USA), Inc. v. New York City Dep't of Educ.,
    17-CV-5027 (RA), 2018 U.S. Dist. LEXIS 151683 (S.D.N.Y. Sept. 6, 2018) ....................... 7

Quinones v. New York City,
    No. 19 Civ. 05400 (LJL) (DF), 2020 U.S. Dist. LEXIS 149333
    (Aug. 17, 2020) ......................................................................................................... 11, 12

Rivera v City of NY,
    No. 1:16-cv-9709-GHW 2019 US Dist. LEXIS 8601 (S.D.N.Y. Jan. 17, 2019) ................... 10

Ruiz v. County of Rockland,
    609 F.3d 486 (2d Cir. 2010) ................................................................................................. 11

Salas v. New York City Dep't of Investigation,
    298 F. Supp. 3d 676 (S.D.N.Y. 2018) ................................................................................... 14

Segal v. City of New York,
    495 F.3d 20 (2d Cir. 2006) ..................................................................................................... 9

Sosa v. N.Y.C. Dep't of Educ.,
    24-1396, 2025 U.S. App. LEXIS 10635 (2d Cir. May 2, 2025) ............................................ 19

Syed Mohammad Aftab Karim v. N.Y. City Health & Hosps. Corp.,
    17 Civ. 6888 (AT), 2020 U.S. Dist. LEXIS 98723 (S.D.N.Y. June 4, 2025) ......................... 7

Thomson v Odyssey House,
    No. 14-CV-3857 (MKB), 2015 U.S. Dist. LEXIS 125887
    (E.D.N.Y. Sep. 21, 2015) ............................................................................................... 12, 15

Vega v. Hempstead Union Free Sch. Dist.,
    801 F.3d 72 (2d Cir. 2015) ................................................................................................. 8, 13

Williams v. Westchester Med. Ctr. Health Network,
    21-CV-3746 (KMK), 2022 U.S. Dist. LEXIS 175332
    (S.D.N.Y. Sept. 27, 2022) ...................................................................................................... 14

**Statutes**                                                                        **Pages**

42 U.S.C. § 1983 .................................................................................................2, 9

N.Y. Educ. L. § 6202 (2) ...........................................................................................5

N.Y. Educ. L. § 6202 (5) ...........................................................................................5

N.Y. Educ. L. § 6203 ................................................................................................5

N.Y.C. Admin. Code §§ 8-101, et seq. ..................................1, 10, 12, 15, 16, 18, 19, 23

New York Civil Rights Law § 40 ...........................................................................1, 5

New York Civil Rights Law § 40-c .........................................................................1, 5

New York Civil Rights Law § 40(d) ...........................................................................5

State Executive Law § 290 .........................................................................................1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

Avraham Goldstein,

                                        Plaintiff,        25-CV-00475 (JAV)

                    -against-

Borough of Manhattan Community College; City
University of New York

                                        Defendants.

------------------------------------------------------------------------x


**DEFENDANTS CUNY AND BMCC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

## PRELIMINARY STATEMENT

Plaintiff, Avraham Goldstein, commenced this action on January 15, 2025, and then filed an Amended Complaint ("FAC") on June 3, 2025, alleging that he was subjected to discrimination, harassment, and retaliation based on his national origin and religion. Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Executive Law §§ 290, et seq. ("SHRL"), and the New York City Administrative Code §§ 8-101, et seq. ("CHRL"). Plaintiff further alleges violations of the New York Civil Rights Law § 40 and 40-c, as well as deprivations of his procedural due process and equal protection rights under the Fourteenth Amendment. Defendants, the Borough of Manhattan Community College ("BMCC"), and The City University of New York ("CUNY"), ("collectively Defendants") now move pursuant to 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") to dismiss the FAC on the following grounds: (1) Plaintiff's discrimination claim under the New York Civil Rights

Law § 40 and 40-c fails; (2) BMCC is not a suable entity; (3) Plaintiff fails to plead any violation of his constitutional rights, and consequently his municipal liability claims against Defendants under § 1983 must fail; (4) Plaintiff otherwise fails to state a plausible claim under federal, state, or city law; and (5) protected speech cannot form the basis of Plaintiff's claims.

Accordingly, Plaintiff's FAC must be dismissed in its entirety.

### STATEMENT OF FACTS[1]

Borough of Manhattan Community College ("BMCC") is a college of The City University of New York ("CUNY").  BMCC is a vibrant and diverse teaching and learning community committed to advancing equity, intellectual development, and personal growth for all students.  Teaching and learning at BMCC are culturally responsive, sustaining, and deeply engaging, honoring and celebrating the rich diversity of experiences and knowledge that every member of the BMCC community brings.  BMCC Mission Statement and Goals, https://www.bmcc.cuny.edu/about-bmcc/mission-statement-and-goals/ (last visited June 20, 2025).  Plaintiff is an Assistant Professor in the BMCC CUNY Mathematics Department.  See Am. Compl. ¶ 21.  Plaintiff self-identifies as Jewish.  Id. ¶ 22.

Plaintiff claims that because he is Jewish, he has experienced several discriminatory and retaliatory incidents on BMCC's campus.  Id. ¶ 101.  For instance, Plaintiff claims that on March 15, 2023, Defendants facilitated a poster exhibit in front of the Office of the Vice President of Student Affairs and the Women's Resource Center.  Id. ¶ 27.  The Social Justice and Equity Center ("SJEC"), which was a part of the Women's Resource Center, sponsored the poster exhibit.  Id.  Plaintiff alleges the poster exhibit contained "false and defamatory statements about the State of Israel and the Jewish people."  Id. at 29.  According to

---

[1] For purposes of this motion to dismiss only, Defendants CUNY and BMCC treat the material allegations of the FAC as true.

Plaintiff, the exhibit was part of a three-part program, called the "Palestinian Solidarity Series." Id. ¶ 31.  This program included a lecture by Maryam Shuaib who Plaintiff calls an "anti-Israel" activist, and a screening of a film called "Farha," which Plaintiff also describes as "anti-Israel." Id. ¶ 32.

 On the same day as the poster exhibition, Plaintiff alleges that he contacted the press and forwarded photos of the exhibit to a "S.A.F.E. CUNY X" account.  Id. ¶ 34.  On or about March 16, 2023, United With Israel[2] published an article about the exhibit, and identified an individual by the name of Nadia Saleh as BMCC's SJEC Program Coordinator.  Id. ¶ 35, 41.

 On or about March 21, 2023, in addition to Plaintiff's public opposition to the poster exhibit, Plaintiff also emailed "every person" on the BMCC SJEC website, asking Defendants to sponsor "anti-discrimination" education on "Jewish Indigeneity in Israel." Id. ¶ 53.

 On or about March 22, 2023, Plaintiff claims that "false and defamatory" reviews accusing Plaintiff of racism against Muslims and Palestinians appeared on a website called, "RateMyProfessor.com," which is not maintained by Defendants.  Id. ¶ 56.  According to Plaintiff, the reviews referenced "non-existent courses" that Plaintiff did not teach or had not taught in the prior decade. Id. ¶ 57.

 On or about March 26, 2023, Plaintiff wrote to BMCC's President Anthony Munroe and former Chief Diversity Officer Odelia Levy requesting an investigation into the reviews posted on "RateMyProfessor.com," and his request to the SJEC to provide anti-discrimination education on Jewish Indigeneity in Israel.  Id. ¶ 60.  On or about April 4, 2023, Plaintiff met with Theresa Wade, BMCC Office of Compliance and Diversity Deputy Director of

Diversity and Title IX Compliance.  Id. ¶ 61.  When asked whether Plaintiff suspected certain individuals were responsible for the reviews, Plaintiff responded that the fact that the reviews quickly followed his request for anti-discrimination education necessitated an investigation into the BMCC SJEC staff.  Id. ¶ 62.

On or about April 28, 2023, Plaintiff claims that in retaliation to his opposition to the poster exhibit, the SJEC co-sponsored and signed an online petition, which opposed Plaintiff's complaints about the poster display.  Id. ¶ 66.

On May 5, and May 17, 2023, Plaintiff complained to Defendants about the petition sponsored by the SJEC.  Id. ¶ 68.

Plaintiff also claims that his request to join the Advisory Council on Jewish Life, which was created on or about May 11, 2023, was ignored.  Id. ¶ 70.

On or about June 4, 2023, Plaintiff submitted a complaint of discrimination through CUNY's online portal.  Id. ¶ 74.  The complaint referenced several incidents, including the March 15, 2023, poster exhibit, the reviews concerning Plaintiff on RateMyProfessor.com, Defendants' failure to respond to Plaintiff's request for anti-discrimination education on Jewish Indigeneity in Israel, and the April 28, 2023, online petition.  Id. ¶ 74.

On or about July 13, 2023, Plaintiff claims he was notified by Defendants that he was under investigation for a complaint filed four months earlier by Nadia Saleh.  Id. ¶ 84.  Defendants were investigating claims that Plaintiff contributed to a publication that disseminated false information regarding Ms. Saleh's ethnicity and religion.  Id. ¶ 85.  On or about May 13, 2024, Defendants informed Plaintiff that his complaints of discrimination regarding the statements found on RateMyProfessor.com, the alleged failure of the SJEC to respond to the

---

[2] United With Israel is an organization created as a result of the Hamas terrorist attack on

request for anti-discrimination education, and the online petition sponsored by Defendants had not been substantiated.  Id. ¶ 92.  On or about August 12, 2024, Defendants informed Plaintiff that Ms. Saleh's complaints against Plaintiff that he engaged in ethnic and religious discrimination when he opposed the poster exhibit had also not been substantiated.  Id. ¶ 93.

## ARGUMENT

### POINT I

### PLAINTIFF'S DISCRIMINATION CLAIM UNDER THE NEW YORK CIVIL RIGHTS LAW § 40 AND 40-C FAILS

Plaintiff alleges Defendants discriminated against him by making defamatory statements about Plaintiff, fabricating complaints, and by initiating "bad-faith investigations of facially baseless claims" against Plaintiff.  See Am. Compl. ¶ 217.  According to Plaintiff, these actions violated his civil rights under New York Civil Rights Law § 40-c.  Id. ¶ 220.  Plaintiff, however, never alleges that he served the Attorney General with notice of his action as required under NYCRL § 40(d) and so his claim under the NYCRL fails.  See Finch v. N.Y. State Office of Children & Family Servs., 10 CV 9691 (VB), 2012 U.S. Dist. LEXIS 99453, *31-32 (S.D.N.Y. May 30, 2012).

### POINT II

### BOROUGH OF MANHATTAN COMMUNITY COLLEGE IS NOT A SUABLE ENTITY

BMCC is a non-suable entity of CUNY and so any actions alleging a violation of the law by BMCC must name CUNY as a party.  See Clissuras v. City Univ. of N.Y., 359 F.3d 79, 81 n.2 (2d Cir. 2004) (citing N.Y. Educ. L. §§ 6202 (2), 6202 (5), 6203); see also James v. Borough of Manhattan Cmty. College, 20-cv-10565 (LJL), 2021 U.S. Dist. LEXIS 229173, *9

---

October 7, 2023, according to https://www.unitedwithisrael.com.au.

(S.D.N.Y. Nov. 29, 2021) (dismissing BMCC from the action and substituting CUNY in its place).  Plaintiff erroneously commenced this action against BMCC, and so this Court should dismiss all claims against Defendant BMCC.

**POINT III**

**PLAINTIFF FAILS TO PLEAD ANY VIOLATION OF HIS CONSTITUTIONAL RIGHTS**

**A.    Plaintiff's Procedural Due Process Claim Under the Fourteenth Amendment of the United States Constitution Fails Because He Has Not Alleged Any Significant Deprivation.**

For Plaintiff's procedural due process claim, Plaintiff alleges that he has a "substantial interest in his employment and professional reputation."  See Am. Compl. ¶ 167. According to Plaintiff, his liberty interest was at stake during Defendants' investigation of Ms. Saleh's discrimination complaint against him.  Id. ¶ 168.  He further alleges that Defendants' actions "infringed upon those interests without providing constitutionally mandated due process protections."  Id.   To sufficiently allege a liberty interest claim based on damage to one's reputation, Plaintiff must allege that the "information was stigmatizing, false, and publicized by the state actor."  Piccoli v. Yonkers Bd. of Educ., 08-CV-8344 (CS), 2009 U.S. Dist. LEXIS 116153, 6* (S.D.N.Y. Dec. 11, 2009).  "Where someone's 'good name, reputation . . . is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.'"  Id.  However, defamation alone is insufficient to raise a due process claim.  Id.  The damage to Plaintiff's reputation must also be tied to the loss of some tangible interest, like termination.  Id. at 7; see also O'Neill v. City of Auburn, 23 F.3d 685, 691 n.2 (2d Cir. 1994) ("[I]t is by now clear that simple damage to reputation does not give rise to a liberty interest claim; rather, the damage must be accompanied by some significant deprivation, such as dismissal from government employment.").  Referred to as a "stigma-plus" claim, Plaintiff must

allege "injury to [his] reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process." Piccoli, 2009 U.S. Dist. LEXIS 116153 at 7.

Here, Plaintiff fails to allege any significant deprivation. Plaintiff was never terminated as a result of the investigation, and in fact, the FAC alleges that BMCC found that Ms. Saleh's complaint against him was unfounded. See Am. Compl. ¶ 92. Plaintiff also has not alleged that the information regarding the investigation was stigmatizing in any way, or that the investigation was publicized by Defendants. Piccoli, 2009 U.S. Dist. LEXIS 116153 at 11. Moreover, Plaintiff had notice of the investigation, and an opportunity to be heard, considering the fact that he was told about the investigation, and it was pending for at least a year.

Accordingly, for the reasons above, Plaintiff's procedural due process claim fails.

**B.    Plaintiff's Equal Protection Claim Under the Fourteenth Amendment of the United States Constitution Fails Because He Has Not Plausibly Alleged Defendants Were Motivated by Discriminatory Intent.**

According to Plaintiff, Defendants violated his rights under the Fourteenth Amendment of the Constitution by the delay in notifying him that an investigation had commenced against him, and by Defendants conducting an investigation into "facially baseless allegations" about Plaintiff. See Am. Compl. ¶¶ 181, 182. The Equal Protection Clause of the Fourteenth Amendment requires that "all persons similarly situated . . . be treated alike." Preschools of Am. (USA), Inc. v. New York City Dep't of Educ., 17-CV-5027 (RA), 2018 U.S. Dist. LEXIS 151683, *16-17 (S.D.N.Y. Sept. 6, 2018). To state a prima facie claim of discrimination under the Equal Protection Clause, Plaintiff must plausibly allege that he "(1) is a member of a protected class, (2) 'was qualified' for the position he sought, (3) 'suffered an adverse employment action,' and (4) 'has at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" Syed Mohammad Aftab Karim v. N.Y. City

Health & Hosps. Corp., 17 Civ. 6888 (AT) (OTW), 2020 U.S. Dist. LEXIS 98723, *15 (S.D.N.Y. June 4, 2025).

Here, Plaintiff's Equal Protection Clause claim fails because he has not alleged an adverse employment action, and he cannot show discriminatory intent beyond conclusory assertions.  At the outset, Plaintiff fails to sufficiently allege an adverse employment action based upon Defendants' notice that they were investigating discrimination claims against him. Employers are obligated to investigate all claims of discrimination, because if they do not, they can incur liability for those discriminatory acts.  See McGrath v. Arroyo, 17-CV-1461 (NGG) (RER), 2019 U.S. Dist. LEXIS 133769, *15 (E.D.N.Y. Aug. 8, 2019) ("An employer's investigation of an employee arising out of allegations of discrimination . . . filed against that employee is not inherently an adverse employment action . . . because refusing to investigate an accusation of discrimination . . . could, in fact, make the employer liable for that discrimination . . . .").  What's more, the allegations made against Plaintiff were ***unsubstantiated***, thereby having no materially adverse change in the terms and conditions of Plaintiff's employment.  See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015).

Neither has Plaintiff alleged discriminatory intent.  The only non-conclusory allegations Plaintiff provides to support this claim are that "[o]n information and belief, Defendants' do not delay for four months in notifying similarly situated non-Jewish, non-Israeli employees of investigations into their conduct" and that "Defendants do not perpetuate for 15 months facially baseless investigations into the conduct of similarly situated non-Jewish, non-Israeli employees." See Am. Compl. ¶¶ 180, 183.

Such threadbare allegations, however, cannot sustain this element: there are no facts alleged whatsoever concerning similarly situated non-Jewish, non-Israeli employees that

were treated differently.[3]  See Burgis v. New York City Dep't of Sanitation, 798 F.3d 63, 68 (2d Cir. 2015) (holding employee's discrimination claims under the Equal Protection Clause was not plausibly alleged because plaintiff's claims were conclusory, and there were no specific instances alleged of discriminatory treatment with an individual employee or others similarly situated.)

Absent from Plaintiff's FAC are any allegations of comparators—specifically similarly situated individuals outside his class—who were treated more favorably than Plaintiff. He also failed to provide specific instances of employees within his class who were treated similar to Plaintiff.  Without this information, or any other facts pointing to discriminatory intent, this Court cannot infer discrimination, and Plaintiff's Equal Protection claim fails.

## POINT IV

**PLAINTIFF FAILS TO PLAUSIBLY PLEAD A CLAIM OF MUNICIPAL LIABILITY AGAINST DEFENDANT UNDER 42 U.S.C. § 1983**

Plaintiff fails to plausibly plead a claim of municipal liability against Defendant under § 1983 because Plaintiff does not plausibly allege a constitutional violation or that Defendants had an official policy that denied Plaintiff any constitutional right.

First, "[i]t is well settled that a Monell claim cannot succeed without an underlying constitutional violation." Dolce v. Connetquot Cent. Sch. Dist., 24-CV-00622 (HG), 2025 U.S. Dist. LEXIS 67970, * 40 (E.D.N.Y. Apr. 9, 2025) citing (Mastromonaco v. Cnty of Westchester, 779 F. App'x 49, 51 (2d Cir. 2019).  And since Plaintiff's constitutional claims fail, see *supra* Point II.A and B, so must the Monell claim.  See Segal v. City of New York, 495 F.3d

---

[3] The FAC on its face, shows that Ms. Saleh's complaint was investigated in a similar time frame as Plaintiff's complaint.  See Am. Compl. ¶¶ 74, 85, 92, 93.

20, 219 (2d Cir. 2006) (affirming district court's decision in not addressing Monell liability when no underlying constitutional violations were found.).

Second, even assuming that Plaintiff had plausibly alleged a constitutional violation (which he hasn't), Plaintiff's FAC has no facts alleging that Defendants had an official policy that denied Plaintiff of that constitutional right.  See Rivera v City of NY, No. 1:16-cv-9709-GHW 2019 US Dist. LEXIS 8601, at *21 (S.D.N.Y. Jan. 17, 2019) (essential element of a Monell claim is allegation of an official custom or policy).  Nor has he alleged "(1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff and others encountering those subordinates."  Arroyo-Horne v City of NY, No. 16-CV-03857 (MKB), 2018 US Dist. LEXIS 151183, at *58 (E.D.N.Y. Sep. 5, 2018).  And his conclusory allegations merely asserting the existence of a municipal policy or custom are not enough.  See Kimble v. Kingston City Sch. Dist., 792 F. App'x 80, 82 (2d Cir. 2019) (affirming the dismissal of plaintiff's § 1983 action where plaintiff failed to plead any facts that would permit the court to conduct the necessary analysis to determine whether a final policymaker was involved, or, conversely, to determine whether plaintiff improperly sought to impose respondeat superior liability).

### POINT V

### THE AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM UNDER FEDERAL, STATE, OR LOCAL LAW

**A.**    **Plaintiff Fails To Plausibly Plead A Claim of Disparate Treatment Under Title VII, SHRL & CHRL Because of a Failure to Allege Adverse Employment Actions or Discriminatory Intent.**

Plaintiff claims Defendants discriminated against him under Title VII, the SHRL, and the CHRL when the SJEC setup a poster exhibit on Palestine, failed to conduct an investigation of Plaintiff's reports of "antisemitic, anti-Israeli treatment" he allegedly endured during employment, failed to respond to Plaintiff's reports of "antisemitic, anti-Israeli treatment," by making false statements about Plaintiff, by "refusing to appoint him to the Jewish Advisory Life Council", and by conducting an investigation of Plaintiff following a complaint against him by Nadia Saleh, a fellow BMCC employee. See Am. Compl. ¶¶ 27, 29, 104, 105, 108, 192.

Claims of disparate treatment under Title VII are analyzed using the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Ruiz v. County of Rockland, 609 F.3d 486, 491 (2d Cir. 2010). To establish a prima facie case of discrimination under this framework, "a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." Ruiz, 609 F.3d at 491-92.

A "plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." Malcolm v. Honeoye Falls Lima Cent. Sch. Dist., 483 F. App'x 660, 662 (2d Cir. 2012) (citing Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)), cert. den., 568 U.S. 1144 (2013)). For an employment action to be considered materially adverse, it must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Id.; see Quinones v. New York City, No. 19 Civ. 05400 (LJL) (DF), 2020 U.S. Dist. LEXIS 149333, *11 (Aug. 17, 2020) ("Examples of materially adverse changes include termination of employment, a demotion evidenced by a

decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.") (citations and quotations omitted) adopted in part by, 2020 U.S. Dist. LEXIS 219764 (S.D.N.Y. Nov. 23, 2020).

For the SHRL, courts in this district have construed the 2019 amendment to the SHRL closer to the standard of the CHRL. Id. at 31. To plead a cause of action of discrimination under the SHRL (post 2019) and CHRL, a plaintiff must show "differential treatment of any degree based on a discriminatory motive." Appleton v. City of New York, Index no. 157849/2017, 2019 N.Y. Misc. LEXIS 1051, at *20 (Sup. Ct., N.Y. Cty. Mar. 13, 2019). Even under this more liberal standard, Plaintiff must still show that he was subject to unequal treatment because of his protected characteristic. See Thomson v Odyssey House, No. 14-CV-3857 (MKB), 2015 U.S. Dist. LEXIS 125887, at *69 (E.D.N.Y. Sep. 21, 2015).

i. Adverse Employment Action

Plaintiff's disparate treatment claims fail under Title VII because he has not alleged any adverse employment actions. For example, Plaintiff has not alleged that he was terminated, that he received a demotion, or that he experienced any other action that diminished the terms and conditions of his employment.

Instead, Plaintiff alleges acts that he characterizes as "adverse actions" but he does not allege how those acts constituted a material adverse change in the terms and conditions of his employment. Take for example, the display of the poster exhibits. Plaintiff fails to allege any facts that, as a result of the poster exhibits, caused him to suffer some sort of negative change to the terms and conditions of his employment. See Henry v. NYC Health & Hosp. Corp., 18 F. Supp. 3d 396, 405 (S.D.N.Y. 2014). Similarly, the denial of Plaintiff's appointment to the Advisory Council is not an adverse employment action since Plaintiff has not claimed that

the denial resulted in any tangible or material loss.  Id.  The same is true for the other acts Plaintiff alleges are adverse actions – there are no allegations connecting them to the terms and conditions of his employment.  See Am. Compl. ¶¶ 53, 105, 108 (alleging as discriminatory conduct Defendants' failure to respond to Plaintiff regarding his request for anti-discrimination education and the investigation of Plaintiff following a discrimination complaint filed against him).

### ii.  Inference of Discrimination

Even if Plaintiff did allege adverse employment actions, which he did not, Plaintiff's discrimination claims fail because he has not plausibly alleged facts tending to show that the putative adverse employment actions were motivated by discrimination based upon his national origin and religion.

A plaintiff must plausibly allege "facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015).  Plaintiff must show, which he cannot do, that he was treated less favorably than a similarly situated employee, and such allegations must demonstrate that the other employee was "sufficiently similar 'to support at least a minimal inference that the difference of treatment may be attributable to discrimination.'"  Newsome v. IDB Capital Corp., No. 13 CV 6576 (VEC), 2016 U.S. Dist. LEXIS 40754, at *45-46 (S.D.N.Y. 2016) (citing McGuinness v. Lincoln Hall, 262 F.3d 49, 54 (2d Cir. 2001)); see also Ellis v. N.Y. Dep't of Educ., No. 19 Civ. 1441 (LAP), 2020 U.S. Dist. LEXIS 42446, *9 (S.D.N.Y. Mar. 11, 2020) ("a plaintiff must allege that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.") (citations and quotations omitted).  Such an inference can arise from circumstances including "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its

invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [adverse action]." Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015) (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009)). It is also important to note that Plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination." Williams v. Westchester Med. Ctr. Health Network, 21-CV-3746 (KMK), 2022 U.S. Dist. LEXIS 175332, *30 (S.D.N.Y. Sept. 27, 2022) ("But without sufficient facts, even the most sincerely held beliefs of discrimination do not comprise a sufficient basis for withstanding a motion to dismiss.")

Here, Plaintiff has not alleged any actions that were motivated by discriminatory intent based on Plaintiff's religion or national origin. Plaintiff relies heavily on conclusory statements and unsupported labels to advance his discrimination claims, which are insufficient to survive a motion to dismiss. See Fukelman 2020 U.S. Dist. LEXIS 66410, *34 ("Merely alleging disparate treatment in a conclusory fashion is not enough."). For example, Plaintiff alleges that Defendants hosted a large poster exhibit containing "false and defamatory statements." None of the alleged statements are directed towards Plaintiff, nor does he allege that those who made the poster did so with discriminatory animus towards Plaintiff. For instance, he cites a poster characterizing Israel as a "colonialist" state. Describing Israel as "colonialist" in an academic poster is insufficient to create an inference of discriminatory intent. See Salas v. New York City Dep't of Investigation, 298 F. Supp. 3d 676, 687 (S.D.N.Y. 2018) (an inference of discrimination can be "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, or preferential treatment given to employees outside the protected class.").

- 14 -

Furthermore, Plaintiff fails to identify anyone outside of Plaintiff's protected class who is similarly situated to Plaintiff, who was treated in a more favorable manner than Plaintiff.

Nor can the conclusory allegations of discriminatory intent and differential treatment sustain claims under the SHRL and CHRL.  <u>See</u> Am. Compl. ¶ 194 ("Defendants' actions created an intimidating, hostile and offensive work environment for Plaintiff, as he was treated differently and unfairly compared to similarly situated, non-Jewish, non-Israeli employees."); <u>see</u> <u>Thomson,</u> 2015 U.S. Dist. LEXIS 125887, at *70.

### iii.  Claims Are Not Covered Under Anti-Discrimination Statutes

Another reason Plaintiff's disparate treatment claims fail under federal, state, and local law is that they are based on conduct involving third parties not in an employment relationship with Defendants, such as the "State of Israel."  Under Title VII, the SHRL and the CHRL, a claim is only actionable under the law when it challenges an "unlawful employment practice" of the employer.  <u>See</u> <u>Foxworth v. Am. Bible Soc'y</u>, 03 Civ. 3005 (MBM), 2005 U.S. Dist. LEXIS 16105, *11-12 (S.D.N.Y. Aug. 3, 2005).  The term "unlawful employment practice" refers to discriminatory conduct that is directed at current or prospective employees and does not extend to discrimination directed at third parties who have no employment relationship with the "allegedly offending employer."  <u>Id.</u> at 12.

In <u>Foxworth v. Am. Bible Soc'y</u>, 03 Civ. 3005 (MBM), 2005 U.S. Dist. LEXIS 16105 (S.D.N.Y. Aug. 3, 2005), the plaintiff, an African-American female who was a Brand Manager for the American Bible Society, alleged that her employer discriminated against the African-American marketplace, and her own marketing efforts.  <u>Id.</u> at 13.  The Court in <u>Foxworth</u> found that to the extent plaintiff's claims arose out of alleged discrimination against members of the "African-American marketplace" as opposed to plaintiff herself, she could not pursue those claims under Title VII, or state and local anti-discrimination statutes.  <u>Id.</u> at 14.

Similar to the plaintiff in <u>Foxworth</u>, Plaintiff here has not adequately alleged any unlawful employment practice directed at him. Plaintiff claims Defendants hosted a poster exhibit that labeled Israel a "colonialist" state. <u>See</u> Am. Compl. ¶ 30. However, CUNY is not in an employment relationship with the "State of Israel", and therefore, any claims that Plaintiff is making on behalf of others to the extent they are not CUNY employees, those claims are not actionable under the law.

In sum, Plaintiff's FAC fails to plausibly allege any adverse employment actions, and even if there were, Plaintiff's conclusory statements about any inference of discrimination are insufficient to survive a motion to dismiss under Title VII, SHRL or CHRL. Consequently, Plaintiff's discrimination claims must be dismissed

## B. Plaintiff Fails to Plausibly Plead A Harassment Claim Under the SHRL Because He Has Failed to Adequately Allege That He was Subjected to the Inferior Terms, Conditions, Or Privileges of Employment.

Plaintiff alleges that Defendants subjected him to harassment due to his religion and national origin by failing to investigate his complaints regarding anti-Israeli discrimination, by making publicly false and defamatory statements about Plaintiff, initiating and conducting an investigation against Plaintiff following a complaint by a colleague, and refusing to appoint him to the Defendants' Jewish Advisory Life Council. <u>See id.</u> ¶ 192. Under the SHRL, which was amended in August of 2019 to eliminate the "severe and pervasive" standard, plaintiffs now need to allege that "[they] were subjected to inferior terms, conditions, or privileges of employment because of the individual's membership in one or more protected categories." <u>Haijin Cho-Brellis v. NY State Off. of Children & Family Servs.</u>, No. 21-CV-1957 (KAM) (JMW), 2022 U.S. Dist. LEXIS 135447, at *33 (E.D.N.Y. July 29, 2022). "It is well-settled, however, that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." <u>Monclova v City of NY</u>,

No. 12-CV-3187 (KAM) (RML), 2014 U.S. Dist. LEXIS 138157, at *28 (E.D.N.Y. Sep. 29, 2014).

Plaintiff's allegations fail to plausibly plead that he was subjected to a hostile work environment on the basis of his religion or national origin.  Critically, Plaintiff fails to allege that any of the complained of conduct was done because of his religion or national origin.  As to Plaintiff's claims of Defendants failing to investigate his complaints regarding anti-Israeli discrimination, a failure to investigate does not affect the terms and conditions of his employment and could not be harassment under the law.  See Lax v. City Univ. of N.Y., 20-3906-cv, 2022 U.S. App. LEXIS 792 *6 (2d Cir. Jan. 11, 2022) ("[A] failure to investigate d[oes] not by itself alter the terms and conditions of . . . employment and thus could not itself have contributed or constituted a hostile work environment.").  Also, by his own admission, this allegation is not true.  Defendants notified Plaintiff on May 13, 2024 that following an investigation his complaint had not been substantiated.  Am. Compl., ¶ 92.

Plaintiff also contends that allegedly false and defamatory statements on the RateMyProfessor.com website constitute harassment.  See Am. Compl. ¶ 192.  But those statements were made by anonymous users on a third-party website (RateMyProfessers.com) and cannot be attributed to Defendants.  Even if they could, the hostile work environment claim still fails because Plaintiff does not plausibly allege how one isolated incident in which Plaintiff was accused of racism impacted his employment.  Moreover, the alleged comment which Plaintiff points out on RateMyProfessor.com does not mention Plaintiff's religion or national origin.  See id. ¶ 56.

Plaintiff has also failed to allege that not being appointed to the Advisory Council on Jewish Life is harassment under the SHRL.  There are no allegations whatsoever as to how

his non-appointment to the Advisory Council on Jewish Life subjects Plaintiff to inferior terms and conditions of employment or how that decision was in any way related to Plaintiff's religion or national origin. Plaintiff does not even allege who decided on the members of the Council, what their religious or national origin backgrounds were, or how he was more qualified than the individuals selected.

Finally, Defendants investigation into complaints of Plaintiff's alleged conduct in contributing to publications which wrote false information about Nadia Saleh based upon her ethnicity and religion was a legal obligation. See McGrath, 2019 U.S. Dist. LEXIS 133769 at 15. The investigation ultimately found the claims against Plaintiff unsubstantiated, and it is nonsensical to claim that it subjected Plaintiff to inferior terms and conditions of employment, where he did not suffer any discipline and was not found to have violated any policies. Consequently, Plaintiff's harassment claim fails.

**C.    Plaintiff Fails to Plausibly Plead a Claim of Retaliation Under Title VII, the SHRL or the CHRL.**

Plaintiff further contends that Defendants retaliated against him when Defendants allegedly engaged in the following acts: (1) making false and defamatory statements about Plaintiff on a website not affiliated with Defendants; (2) co-sponsoring and signing a retaliatory online petition; (3) conducting an investigation against Plaintiff regarding allegations that Plaintiff contributed to publications, which wrote false information about Ms. Saleh based on her ethnicity and religion; and (4) by not appointing Plaintiff to the Advisory Council on Jewish Life. See Am. Compl ¶¶ 8, 66, 84, 132, 142.

To state an unlawful retaliation claim under Title VII, Plaintiff "must show: "(1) [he] engaged in a protected activity; (2) [his] employer was aware of this activity; (3) the employer took adverse employment action against [him]; and (4) a causal connection exists

between the alleged adverse action and the protected activity." Calise v. Casa Redimix Concrete Corp., 20 Civ. 7164 (PAE), 2022 U.S. Dist. LEXIS 20962, *12-13 (S.D.N.Y. Feb. 4, 2022).  An adverse action in the retaliation context under Title VII is "any action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Colon-Regus v. FEGS Health & Human Serv. Sys., 12 Civ. 2223 (AT) (KNF), 2015 U.S. Dist. LEXIS 32027, at *32 (S.D.N.Y. Mar. 11, 2015). To determine whether a person has alleged a retaliation claim under the SHRL and CHRL, the Plaintiff must show that "[he] took an action opposing [his] employer's discrimination and that, as a result, the employer engaged in conduct that was reasonable likely to deter a person from engaging in such action." Freud v. New York City Dep't of Educ., 1:21-cv-2281, 2022 U.S. Dist. LEXIS 54353, *45 (S.D.N.Y. Mar. 25, 2022).[4]

### i.  Adverse Employment Actions

Plaintiff fails to allege that Defendants took an adverse employment action against him in retaliation for his complaints.  As to the reviews on RateMyProfessor.com, Plaintiff does not even allege, nor could he, that Defendants wrote the unfavorable reviews against him.  When the Deputy Director of Diversity and Title IX Compliance Officer Theresa Wade asked Plaintiff whether he suspected specific individuals may be responsible for the reviews, Plaintiff's only response was that the timing was "suspicious" because the posting of the reviews followed one day after asking for anti-discrimination education, and Plaintiff only suggested that Defendants investigate the BMCC SJEC staff.  See Am. Compl. ¶ 62.  Plaintiff has not alleged that the website was affiliated in any way with Defendants or that they are responsible for ratings or postings on the website.  Moreover, RateMyProfessor.com indicates

---

[4] With the SHRL amendment in 2019, retaliation claims brought under the SHRL are in line with the CHRL standard for claims accruing on or after October 11, 2019.  See Sosa v. N.Y.C. Dep't of Educ., 24-1396, 2025 U.S. App. LEXIS 10635, *10 n.2 (2d Cir. May 2, 2025).

that ratings are always anonymous.  The retaliation claim based upon the reviews fail because there is no indication that it was Defendants that wrote the negative reviews against Plaintiff.

None of the other allegedly retaliatory conduct by Defendants would have dissuaded a reasonable worker from making or supporting a charge of discrimination, or deterred a person from engaging in such action.  Plaintiff's FAC demonstrates this.  The online petition is protected speech by members of the CUNY community responding to Plaintiff's opposition to the poster display.  See Am. Compl., ¶¶ 66-67.  The petition also was not issued by Defendants. Plaintiff does not allege how the April 28, 2023 petition addressing Plaintiff's opposition to the poster display discouraged him from making future complaints, and in fact he made subsequent complaints on May 5 and 17, 2023 (about the petition) and June 4, 2023.  Am. Compl., ¶¶ 68, 74. See Freud v. New York City Dep't of Educ., 1:21-cv-2281 (MKV), 2022 U.S. Dist. LEXIS 54353, *46 (S.D.N.Y. Mar. 25, 2022) (dismissing plaintiff's retaliation claims and finding that "the complained of conduct by the defendants did not chill Plaintiff's pursuit of his charge of discrimination" when Plaintiff mailed several notarized letters, filed an Office of Civil Rights complaint and a complaint with the EEOC following defendants alleged conduct.). Fundamentally, the petition had no impact on his employment.

The decision to investigate Plaintiff following a complaint of discrimination fails as well.  As previously demonstrated, Defendants' investigation into complaints of Plaintiff's alleged conduct in contributing to publications which wrote false information about Nadia Saleh based upon her ethnicity and religion was a legal obligation.  It again makes no sense to argue that an investigation that ultimately exonerated Plaintiff is sufficient to allege an action that would dissuade a reasonable worker from making or supporting a charge of discrimination.

Finally, Plaintiff has not alleged any details regarding how the failure to appoint Plaintiff to the Jewish Advisory Council, which does not appear related at all to his work as a Mathematics professor, could support an adverse action.

Consequently, Plaintiff's retaliation claims fail.

### ii. Lack of A Causal Connection

Finally, there is also no causal connection between the alleged adverse actions and Plaintiff's protected activity.  Plaintiff alleges that the RateMyProfessor reviews were retaliatory, but those reviews were posted on March 22, 2023 *before* Plaintiff's first complaint to Defendants on March 26, 2023.  See Am. Compl., ¶¶ 56, 59.  See Johnson v. City of New York, 23-CV-5378, 2024 U.S. Dist. LEXIS 132580, *21 (S.D.N.Y. July 24, 2024) (dismissing Plaintiff's retaliation claim based upon a lack of a causal link between the alleged retaliatory conduct and protected activity, and finding since most of the conduct Plaintiff claims are adverse employment actions, preceded his protected activity.").

Plaintiff alleges Defendants retaliated against him by conducting an investigation prompted by a complaint by Nadia Saleh concerning allegations that Plaintiff wrote false information about Ms. Saleh based upon her ethnicity and religion and then shared these publications on social media.  See Am. Compl. ¶ 85.  Plaintiff claims that this was in retaliation for filing his June 4, 2023 complaint of discrimination through the CUNY university wide portal. See id. ¶ 89.

Plaintiff's retaliation claim based upon the investigation fails because of the lack of a causal connection between his complaint and this investigation.  Defendants' investigation was prompted by Ms. Saleh's complaints of discrimination against Plaintiff, which Defendants had a duty to investigate.  According to Plaintiff, "[o]n information and belief, Defendants have targeted other Jewish employees by pursuing facially baseless allegations in retaliation for

complaining about antisemitic treatment." <u>See</u> Am. Compl. ¶ 90. However, there are no facts supporting the alleged targeting by Defendants, or that the allegations are "facially baseless." What Plaintiff's allegations do support is the fact that an employee made a complaint of discrimination, and Defendants were tasked with investigating that complaint. Further, that complaint was made on March 20, 2023, and so it too preceded any protected activity by Plaintiff. ¶ 162.

Plaintiff also claims Defendants retaliated against him when they did not appoint him to the Advisory Council on Jewish Life. <u>See</u> Am. Compl. ¶¶ 142, 157, 206. Defendants created the Advisory Council on Jewish life on or about May 11, 2023. <u>Id.</u> ¶ 70. According to Plaintiff, as of the filing of his complaint, Defendants had not appointed Plaintiff to the Advisory Council on Jewish life. <u>Id.</u> ¶ 72. However, Plaintiff does not allege how the decision not to appoint him to the Council is connected to his alleged protected activity. Instead, he simply alleges that he asked the Chancellor of CUNY to appoint him. <u>Id.</u> ¶ 71. Plaintiff does not allege that the Chancellor was aware of his protected activity, how Plaintiff is qualified for appointment to the Council, or provide any nonconclusory allegations for how the nonappointment of a mathematics professor to the Council was causally related.

Plaintiff has not plausibly alleged adverse employment actions or demonstrated a connection between his alleged protected activities and Defendants' conduct. Consequently, Plaintiff's retaliation claims fail.

**POINT VI**

**PROTECTED SPEECH CANNOT FORM THE**
**BASIS OF PLAINTIFF'S CLAIMS**

Plaintiff alleges that the poster exhibit was discriminatory because the poster labeled Israel a "colonialist" state and a petition protesting Plaintiff's criticism of the poster

display.  See Am. Compl. ¶ 30, 66-67.  An allegation that Israel is a "colonialist" state, while not

endorsed by Defendants, is protected by the First Amendment, and cannot support a Title VII,

SHRL or CHRL claim.  See Gartenberg v. Cooper Union for the Advancement of Science and

Art, 765 F. Supp. 3d 245, 261 (S.D.N.Y. Feb. 5, 2025) ("[R]equiring schools to censor or punish

political speech to avoid liability for a hostile environment would burden not only their students'

freedom of expression, but the academic freedom of the institution itself to create an educational

environment centered around the free exchange of ideas.")   The court's recent decision in

Gartenberg, is instructive.  In that case (similar to the Plaintiff here), the plaintiffs alleged a

hostile environment based on conduct which included inter alia advocacy on campus which they

considered antisemitic harassment.  Id. at 259.  While the court ultimately concluded that the

plaintiffs sufficiently alleged a hostile educational environment, the court expressed grave

concern about universities censoring political speech to avoid liability for a hostile educational

environment.  Id. at 275 ("It would be difficult to imagine an outcome more antithetical to the

First Amendment than imposing liability for a hostile environment on a [] college for its

judgment about what its students should be taught or allowed to say on matters of political

significance.").  Here, Plaintiff alleges that he was offended by a poster exhibit that described

Israel as a colonialist state.  There is no allegation that the exhibit was directed at Plaintiff

personally, and unlike the plaintiffs in Gartenberg, that the poster exhibit involved threatening or

intimidating behavior, which may not be protected by the First Amendment.   Plaintiff's

subjective offense at a political viewpoint, without more, cannot establish a claim under federal,

state, or local law.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant its motion to dismiss the FAC in its entirety and deny the relief requested therein, together with such other and further relief as this Court deems just and proper.

Dated:        New York, New York
              June 23, 2025

**MURIEL GOODE TRUFANT**
Corporation Counsel of the
   City of New York
Attorney for Defendants
100 Church Street, Room 2-146
New York, New York 10007
(212) 356-2475
krhau@law.nyc.gov

By:    /s/ Karen K. Rhau
       Karen K. Rhau
       Assistant Corporation Counsel

## CERTIFICATION

I hereby certify that the enclosed brief is produced using 12-point Times New Roman type and the total number of words in the foregoing document including footnotes and exclusive of the caption, table of contents, table of authorities, and signature block, is 6,813 according to the "Word Count" function of Microsoft Word, the word processing system used to prepare the document, and thus that the document complies the word count limit set forth not to exceed 8,750 words, exclusive of the caption, table of contents, table of authorities, and signature block.

Dated:        New York, New York
              June 23, 2025

                                        /s/ Karen K. Rhau
                                        _____
                                        Karen K. Rhau
                                        Assistant Corporation Counsel