**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Avraham Goldstein | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| City University of New York, | ) | Civil Action Case No. 1:25-cv-475 |
| Borough of Manhattan Community College, | ) | |
| City University of New York, Tammie N. | ) | |
| Velasquez, Nadia A. Saleh, Theresa B. Wade, | ) | |
| Odelia Levy, Saly Abd Alla, and Félix V. Matos | ) | |
| Rodríguez. | ) | |
| | ) | |
| Defendants. | ) | |

<u>**PLAINTIFF'S OPPOSITION TO DEFENDANT SALEH'S MOTION TO DISMISS**</u>

i

**Table of Contents:**

ARGUMENT                                                                                                    3

I. Defendant Saleh Should Have Requested Clarification If She Was Confused…………….3

II. The Well Plead Complaint States Claims for Employment Discrimination …………4

    A.  The Complaint Adequately Alleges That Defendant Saleh Discriminated Against Goldstein Because He Is Jewish and Israeli…………………………..………………....4

    B.  The Employment Discrimination Claims Do Not Violate the First Amendment to the United States Constitution..………………….……………10

    C.  The Discrimination Claims Allege Actionable Harassment Not Merely a Trivial Inconvenience……………………………………………………………….……..14

III. The Well Plead Complaint States Claims for Retaliation……………………….……15

    A.   Defendants' Antisemitic Workplace Exhibit Was Not Protected by the First Amendment From Employment Discrimination Claims…………………16

    B.   The Complaint Adequately Alleges Conduct by Defendant Saleh Likely to Deter A Reasonable Person From Participating in Protected Activity………………..16

    C.   Plaintiff Adequately Alleged that His Opposition to the Defendants' Discriminatory Workplace Exhibit Was Based On a Good Faith, Reasonable Belief That It Was Unlawful……………………………………………………………….18

IV..   Defendant Saleh Failed to Adequately Respond to Goldstein's Allegations of Anti-Semitic Discrimination………………………………………………………………20

V..  The Complaint Adequately Alleges Discrimination Under the New York City Civil Rights Law…………………………………………………………………………………… 21

VI..   Plaintiff States a Claim Against Defendant Saleh For Violating His Rights to Due Process and Equal Protection Under Section 1983……………………………………………….21

## TABLE OF AUTHORITIES

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868)………..…………………7, 8

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142)…………....24

*Aviles v. Cornell Forge Co.*, 183 F.3d 598, 606 (7th Cir. 1999)…..…………...………………20

*Baty v. Willamette Indus., Inc.*, No. 96-2181-JWL, 1997 WL 292123, at *7 (D. Kan. May 1, 1997)  …………………………………………………………………………………………16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 590 n. 9, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)………………………………………………… 6

*Brewster v. City of Poughkeepsie*, 447 F. Supp. 2d 342, 351 (S.D.N.Y. 2006)………………….12

*Ray v. Henderson*, 217 F.3d 1234, 1238 (9th Cir. 2000)……………..………………………...20

*Eldridge v. Rochester City Sch. Dist.*, 968 F.Supp.2d 546, 560, No. 12–CV–6365L, 2013 WL 5104279, at *11 (W.D.N.Y. Sept. 13, 2013))(as cited in Weber v. City of New York, 973 F. Supp. 2d 227, 270 (E.D.N.Y. 2013) ………………………………………………………………………….………………….20

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)…………………………….27

*Croons v. New York State Off. of Mental Health*, 18 F. Supp. 3d 193, 199 (N.D.N.Y. 2014)……6

*Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S. Ct. 183, 186, 66 L. Ed. 2d 185 (1980)………24, 26

*Emengo v. State*, 143 A.D.3d 508 (1st Dept. 2016)…………………………………………...22

*Equal Emp. Opportunity Comm'n v. Day & Zimmerman NPS, Inc.*, 265 F. Supp. 3d 179, (D. Conn. 2017)………………………………………………………………………………………16

*Freedom of Speech and Workplace Harassment*, 39 UCLA L. Rev. 1791, 1804 (1992)………...13

*Garrett v. City Univ. of New York*, No. 24-CV-9710 (VSB) (RWL), 2025 WL 3096550, at *14 (S.D.N.Y. Oct. 10, 2025)………………………………………………………… 14, 15,17, 20

*Garrett v. City Univ. of New York*, No. 24-CV-9710 (VSB) (RWL), 2025 WL 3096550 (S.D.N.Y. Oct. 10, 2025)………………………………………………………………………………..14

*Gartenberg v. Cooper Union for Advancement of Sci. & Art*, No. 24 CIV. 2669 (JPC), 2025 WL 602945 (S.D.N.Y. Feb. 25, 2025)……………………………………………………10, 12

*Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, 765 F. Supp. 3d 245, 253 (S.D.N.Y. 2025)………………………………………………………………………………….10

*Guilfoile v. Shields*, 913 F.3d 178, 193 n.15 (1st Cir. 2019)………………………………..11

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993)……………………………..15,16

*Herlihy v. Metro. Museum of Art*, 214 A.D.2d 250, 257, 633 N.Y.S.2d 106, 110 (1995)………. 16

*Herskowitz v. State*, 222 A.D.3d 587, 587–88, 204 N.Y.S.3d 1, 3 (1st Dept. 2023)……….. 18, 22

*Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. Of Boston*, 515 U.S. 557, 572-573
(1995); 303 Creative LLC v. Elenis, 600 U.S. 570, 589 (2023)…………………………………23

*Hustler Magazine*, 485 U.S. at 52………………………………………………………………..15

*Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994)……………………………...………… 25

*Jaskoll vs. Fairleigh Dickinson University*, Docket No. BER-L-6189-25 (Super. Ct., New Jersey
February 13, 2026)(Transcript of February 13, 2026 Motion to Dismiss and Bench Ruling,
attached hereto as Exhibit A)……………………………………………………………….13

*Jew v. University of Iowa*, 749 F. Supp. 946, 961 (S.D. Iowa 1990)……………………………14

*Krause v. Lancer & Loader Grp*., LLC, 40 Misc. 3d 385, 393, 965 N.Y.S.2d 312, 319 and n. 3
(Sup. Ct.2013)……………………………………………………………..……………..8, 10

*Landau v. Corp. of Haverford Coll*., 789 F. Supp. 3d 401, 410 (E.D. Pa. 2025)…….10, 11, 14, 23

*Nat'l Socialist Party of Am. v. Vill. of Skokie*, 432 U.S. 43, 44, 97 S. Ct. 2205, 2206, 53 L. Ed. 2d
96 (1977)………………………………………………………………………………...23

*Nesathurai v. Univ. at Buffalo*, 23 A.D.3d 1070, 1071, 804 N.Y.S.2d 195 (2005)………..… 24, 25

New York State Human Rights Law, Executive Law § 296   7

*Noviello v. City of Boston*, 398 F.3d 76, 93 (1st Cir. 2005)    17

*O'Neal v. State Univ. of N.Y*., No. 01–CV–7802, 2006 WL 3246935, at * 13
(E.D.N.Y. Nov. 8, 2006)……………………………………………………………….20

*Palmer v. Cook*, 65 Misc. 3d 374, 388, 108 N.Y.S.3d 297, 307 (N.Y. Sup. Ct. 2019)……………8

*Palmer v. Cook*, 65 Misc. 3d 374, 390, 108 N.Y.S.3d 297, 309 (N.Y. Sup. Ct. 2019)……………8

*R.A.V. v. City of St. Paul*, 505 U.S. 377, 432,
112 S. Ct. 2538, 2569, 120 L. Ed. 2d 305 (1992)…………………………………….... 14

*Reichman v. City of New York*, 179 A.D.3d 1115, 117 N.Y.S.3d 280 (2nd Dept. 2020)…………19

*Richards v. New York City Health + Hosps. Corp*., No. 23-8033, 2025 WL 2910502
(2d Cir. Oct. 14, 2025)…………………………………………………………………7, 8

iv

*Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604 (1987)……………………………………………………………………………….……12

*Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 208 (3d Cir. 2001)………………………….. 16

*Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir.2001)……………………………………….20

*Seemungal v. New York State Dep't of Fin. Servs.*, 222 A.D.3d 467, 467, 202 N.Y.S.3d 22, 23 (1st Dept 2023)……………………………………………………………………10, 22

*Sinai v. New Eng. Tel. & Tel. Co.*, 3 F.3d 471, 474 (1st Cir. 1993)………………………...11

*Stand With US Ctr. for Legal Just. v. Massachusetts Inst. of Tech.*, 158 F.4th 1, 11 (1st Cir. 2025)…………………………………………………………...10

*StandWithUs Ctr. for Legal Just. v. Massachusetts Inst. of Tech.*, 165 F.4th 97, 100-01 (1st Cir. 2026)………………………………………………………..11

*Stella v. Potter*, 297 F. App'x 43, 45 (2d Cir. 2008)……………………………………………7

*Stratton v. Bentley Univ.*, 113 F.4th 25, 43 (1st Cir. 2024)……………………………………18

*Sumrall v. Ali*, 793 F. Supp. 3d 199 (D.D.C. 2025)…………………………………………...12

*Vig v. New York Hairspray Co., L.P.*, 67 A.D.3d 140, 144–45, 885 N.Y.S.2d 74, 77 (1st Dept. 2009)………………………………………………………………………………………8

*Walsh v. Caliber Home Loans, Inc.*, No. 19-CV-08966 (PMH), 2021 WL 124684, at *1 (S.D.N.Y. Jan. 13, 2021)………………………………………..6

*Weinberg v. Nat'l Students for Just. in Palestine*, No. 2:25-CV-03714-MCS-JC, 2026 WL 184302, at *11 (C.D. Cal. Jan. 20, 2026)………………………………………..………………15

*Wisconsin v. Mitchell*, 508 U.S. 476, 487, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993)………...15, 16

*Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013)…………………………... 22

## <u>Statutes</u>

New York City Human Rights Law, N.Y. City Admin. Code § 8-101……………………………7

New York State Human Rights Law § 296 ………………………………………………………………………..……………....7

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6)………………………………………………………….…7, 11

Local Rule 7.1(c); Indiv. Rule 5.A; Indiv. Rule 5.E……………………………………………6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Avraham Goldstein | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| City University of New York, | ) | Civil Action Case No. 1:25-cv-475 |
| Borough of Manhattan Community College, | ) | |
| City University of New York, Tammie N. | ) | |
| Velasquez, Nadia A. Saleh, Theresa B. Wade, | ) | |
| Odelia Levy, Saly Abd Alla, and Félix V. Matos | ) | |
| Rodríguez. | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S OPPOSITION TO DEFENDANT SALEH'S MOTION TO DISMISS

Plaintiff, Avraham Goldstein ("Goldstein"), by his attorneys, National Jewish Advocacy Center, hereby respectfully submits this memorandum in opposition to Defendant Saleh's ("Saleh") motion to dismiss the Third Amended Complaint ("TAC" or "complaint"), and respectfully requests that the Court to deny Defendant Saleh motion to dismiss in its entirety. [1]

### ARGUMENT

### I.    Defendant Saleh Should Have Requested Clarification If She Was Confused

Saleh argues that the complaint should be dismissed because it does not designate which counts are directed at her. See Saleh's Mot. to Dismiss, at pages 4-6. However, this is not grounds

---

[1] Defendant Saleh's motion to dismiss should be denied as a threshold matter because it fails to comply with the Local Rules and Your Honor's Individual Rules.  See *Walsh v. Caliber Home Loans, Inc.*, No. 19-CV-08966 (PMH), 2021 WL 124684, at *1 (S.D.N.Y. Jan. 13, 2021).  It does not include a certificate that it complies with the 8,750 word-count limitation (and at 39 pages, it is not obvious that it did), nor a Table of Contents or Table of Authorities, nor cites to Westlaw where those citations are available.  See Local Rule 7.1(c); Indiv. Rule 5.A; Indiv. Rule 5.E.  These deficiencies unfairly prejudiced Plaintiff Goldstein by squandering counsel's limited resources.

for dismissal. Neither opinion cited by Saleh dismissed complaints because they were allegedly shotgun pleadings.   Rather, defendants who claim confusion are chided for failing to seek clarification pursuant to Fed. R. Civ. P. 12 (e), which Saleh failed to do. *See Croons v. New York State Off. of Mental Health,* 18 F. Supp. 3d 193, 199 (N.D.N.Y. 2014); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 590 n. 9, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

### II.    The Well Plead Complaint States Claims for Employment Discrimination

### A.    The Complaint Adequately Alleges That Defendant Saleh Discriminated Against Goldstein Because He Is Jewish and Israeli

Defendant Saleh argues that Goldstein's employment discrimination claims for lodging a false and defamatory complaint against him should be dismissed because a complaint is protected activity and is not grounds for liability, and that her signature on an antisemitic petition is protected speech.  Saleh Motion to Dismiss, at 7[2].   Defendant Saleh further argues that Goldstein did not put forward a basis to suggest that Ms. Saleh's conduct was motivated by discrimination against his protected characteristics as a Jew or an Israeli, citing *Richards v. New York City Health + Hosps. Corp.,* No. 23-8033, 2025 WL 2910502 (2d Cir. Oct. 14, 2025) and *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). Saleh Mot. to Dismiss, at pages 10-19.

In considering a motion to dismiss for failure to state a cause of action under Fed. R. Civ. P. 12(b)(6), the court is required to accept as true the facts as alleged in the complaint, accord the plaintiff the benefit of every favorable inference and strive to determine only whether the facts

---

[2] Defendant Saleh argues that the Title VII employment discrimination and retaliation claims must be dismissed as to her because Title VII only applies to employer entities and not individuals. Saleh Mot. to Dismiss, at page 9-10, 25.  Treating this argument as the Rule 12(e) request for clarification it should have been, Plaintiff clarifies that the Title VII claim for employment discrimination is not brought against Defendant Saleh. Accordingly, Defendant Saleh's motion to dismiss on this ground should be denied as moot.

2

alleged fit within any cognizable legal theory. *See, eg, Stella v. Potter*, 297 F. App'x 43, 45 (2d Cir. 2008).

Mr. Goldstein herein asserts claims for employment discrimination under the New York State Human Rights Law, Executive Law § 296 ("NYSHRL") and New York City Human Rights Law, N.Y. City Admin. Code § 8-101 ("NYCHRL"), TAC, at paras. 220-237; 303-321. As conceded by Defendant Saleh, under the NYSHRL, actionable harassment need not "be considered severe or pervasive," and "[s]uch harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions, or privileges of employment because of the individual's membership in one or more ... protected categories." NYS § 296(h) Saleh Mot. To Dismiss, at 9.  Racial or religious derogatory comments alone may state a claim for employment discrimination under NYSHRL. *See, eg., Palmer v. Cook*, 65 Misc. 3d 374, 390, 108 N.Y.S.3d 297, 309 (N.Y. Sup. Ct. 2019).

The NYCHRL sets a lower standard for maintaining a cause of action for hostile work environment. Plaintiff must show "he was treated less well than other employees because of his membership in a protected class.  The plaintiff should prevail in an action under the NYCHRL if he or she proves that unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for an adverse employment action.  *See Palmer v. Cook*, 65 Misc. 3d 374, 388, 108 N.Y.S.3d 297, 307 (N.Y. Sup. Ct. 2019). Employment discrimination cases arising under NYSHRL are reviewed under notice pleading standards. *See Vig v. New York Hairspray Co., L.P.*, 67 A.D.3d 140, 144–45, 885 N.Y.S.2d 74, 77 (1st Dept. 2009); *Krause v. Lancer & Loader Grp., LLC*, 40 Misc. 3d 385, 393, 965 N.Y.S.2d 312, 319 and n. 3 (Sup. Ct. 2013).

The *Richards* case cited by Saleh is factually inapposite, because that complaint contained zero allegations suggesting that plaintiff's employment contract was not renewed because of his

protected characteristics as a Black and Jamaican, and *expressly alleged* that plaintiff's colleague who shared his protected characteristics and whose contract was likewise not renewed was *not* discriminated against. *Id.* at *2. Furthermore, the *Ashcroft* holding that a court does not need to accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," does not involve employment discrimination (*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868).

In contrast, the complaint herein alleges that Saleh was the Coordinator of a center within Defendants' CUNY BMCC Social Justice and Equity Center ("SJEC") which sponsored an antisemitic exhibit at Goldstein's workplace.  TAC, at paras. 48 – 52. For example, the exhibit falsely and antisemitically labeled Israel a "colonialist" state, a patently false aspersion because Jews have no other state from which they could launch a "colony".  TAC, at para. 54.  The complaint further alleges that within days after Mr. Goldstein publicly opposed the discriminatory, antisemitic exhibit at his workplace, Defendant Saleh filed a false and defamatory complaint against him, claiming that he was anti-Muslim and racist.  TAC, at para. 144.

Two days later, Saleh's false and defamatory allegations against Mr. Goldstein were eerily echoed in "anonymous" false and defamatory RateMyProfessors reviews of Mr. Goldstein for the first time in his career.  TAC, at 145.  The following month, Defendant signed an antisemitic petition that falsely and perniciously slandered Jews by referring to their purchase and renting of portions of the Land of Israel as "theft" of Palestinian land, falsely and defamatorily referred to Jewish exiles' return to their historic homeland as Zionist settler "colonial rule," and derisively referred to Goldstein's request that SJEC offer education on Jewish indigeneity in the Land of Israel as a "Zionist tactic."  TAC, at paras. 96-102. Goldstein further alleges that as a result of Saleh's false and defamatory allegations against him, he remained under investigation for nearly

*one and one-half years*, and that he was aware that the sword of Damocles of investigation was hanging over his head for thirteen months of this time period.[3] These allegations go far beyond what is required to plead discriminatory animus at the motion to dismiss stage.

Thus, Defendant Saleh's arguments that Mr. Goldstein has failed to demonstrate pretext or intentional discrimination on her part are of no consequence on this motion to dismiss. *See Seemungal v. New York State Dep't of Fin. Servs.*, 222 A.D.3d 467, 467, 202 N.Y.S.3d 22, 23 (1st Dept. 2023)(reversing dismissal of employment discrimination claim because trial court incorrectly required plaintiff to "set forth ... sufficient evidence to prove that defendants' actions were rooted in discrimination, and requiring plaintiff "to show that there was a causal connection between plaintiff's protected activity and the alleged retaliation."); *Krause v. Lancer & Loader Grp., LLC*, 40 Misc. 3d 385, 394, 965 N.Y.S.2d 312, 320 (Sup. Ct. 2013).

In Defendant Saleh's misrepresentation of her anti-Jewish and anti-Israeli employment discrimination against Mr. Goldstein, she relies heavily on three Title VI educational benefit and participation cases, including two nonprecedential out of state decisions: *Stand With US Ctr. for Legal Just. v. Massachusetts Inst. of Tech.,* 158 F.4th 1, 11 (1st Cir. 2025)(hereinafter referred to as *"MIT")*; *Landau v. Corp. of Haverford Coll.*, 789 F. Supp. 3d 401, 410 (E.D. Pa. 2025); and *Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, 765 F. Supp. 3d 245, 253 (S.D.N.Y. 2025), *reconsideration denied sub nom. Gartenberg v. Cooper Union for Advancement*

---

[3]Saleh repeatedly misreads the black and white allegations of the complaint to falsely understate **by a full year** the period of time that Goldstein was suffering with the sword of Damocles of investigation hanging over his head. Saleh falsely asserts that her complaint was dismissed as unsubstantiated on August 12, **_2023_**. *See eg,* Saleh Mot. to Dismiss, at 7, 23 (citing Second Amended Complaint, at paragraphs 104, 116). Rather, Goldstein was notified on August 12, **_2024_** that Saleh's complaint was unsubstantiated. *See* Second Amended Complaint at paras. 104, 116; *see also* Third Amended Complaint, at paras. 136, 150)(same).

*of Sci. & Art*, No. 24 CIV. 2669 (JPC), 2025 WL 602945 (S.D.N.Y. Feb. 25, 2025). Saleh Mot. To Dismiss, at pages 11-19. For numerous reasons, these Title VI educational benefit and participation cases are irrelevant and inapposite.

Most importantly, none of these cases were employment discrimination or retaliation cases. A Title VI educational benefit and participation claim requires a student to plead that she was subject to "severe or pervasive harassment" which deprived the student of "educational benefits or opportunities" that she was otherwise entitled to.   *See Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, 765 F. Supp. 3d 245, 259 (S.D.N.Y. 2025), *reconsideration denied sub nom. Gartenberg v. Cooper Union for Advancement of Sci. & Art*, No. 24 CIV. 2669 (JPC), 2025 WL 602945 (S.D.N.Y. Feb. 25, 2025). No such heightened standard applies here to Mr. Goldstein's claims as set forth above.

Indeed, the only one of these educational benefit and cases referencing an investigation of a Jewish and Israeli professor expressly limited his ruling in this regard to the Title VI arena, and noted that there were no allegations that university treated non-Jewish and Israeli professors better. *See Landau v. Corp. of Haverford Coll.*, 789 F. Supp. 3d 401, 416 n. 8 (E.D. Pa. 2025).

Third, and without litigating a different case here, the Court should be wary of following *MIT* down the path of misapplication of law in a nonprecedential  opinion.[4] In *MIT*, the First Circuit invented a new standard for reviewing the plausibility of Title VI claims which runs in conflict to Fed. R. Civ. P. 12(b)(6) precedent. Indeed, First Circuit Judge Dunlap disagreed with the panel's dismissal the Title VI complaint under Fed. R. Civ. P. 12(b)(6), because it was at least plausible that certain anti-Israel speech, in context, supports an "inference of animus towards

---

4 Moreover, the future of the MIT decision itself is uncertain because plaintiffs in that case are within the time period for filing a Petition for Certiorari.

Jews." *See StandWithUs Ctr. for Legal Just. v. Massachusetts Inst. of Tech.,* 165 F.4th 97, 100-01 (1st Cir. 2026)(concurrence, Dunlap, J., on denial of petition for *en banc* rehearing)(citations omitted).

Indeed, the *MIT* panel ruling that anti-Israel speech is always political speech and never discriminatory antisemitism is of questionable precedential value even within the First Circuit because it flatly contradicts the First Circuit decision in *Sinai v. New Eng. Tel. & Tel. Co*., 3 F.3d 471, 474 (1st Cir. 1993), that anti-Israel disparagement can be antisemitic employment discrimination, in violation of the First Circuit rule that subsequent panels are bound by prior panel rulings. *Guilfoile v. Shields*, 913 F.3d 178, 193 n.15 (1st Cir. 2019).

In *Sinai*, the First Circuit affirmed a judgement against the employer because the jury could have determined that the employer, through its hiring manager, discriminated against the plaintiff job applicant on the basis of his Hebrew/Jewish race by disparaging Israel, explaining:

> Israel is one of those countries in which the populace is composed primarily of a particular race [ie, Jews]. As Justice Brennan stated of race and national origin discrimination, often "the two are identical as a factual matter: one was born in the nation whose primary stock is one's own ethnic group." *Saint Francis Coll. v. Al-Khazraji,* 481 U.S. 604, 614, 107 S. Ct. 2022, 2028, 95 L. Ed. 2d 582 (1987) (Brennan, J., concurring). That Israel is a Jewish state, albeit not composed exclusively of Jews, is well established.

3 F.3d 471, 474 (1st Cir. 1993)(full citation added).

Similarly, in *Gartenberg*, this Court denied a motion to dismiss a Title VI claim, holding that signs referring to Jews in Israel as "settlers liv[ing] comfortably on our lands" and suggested that Hamas's attacks were a mere reaction to that "settler colonization," understood in the light most favorable to the plaintiff, "goes beyond mere criticism of Israeli government policy or of Zionist ideology, and instead sends a message that Jews as a class do not belong in Israel." *See Brewster v. City of Poughkeepsie*, 447 F. Supp. 2d 342, 351 (S.D.N.Y. 2006) (holding that

7

statements referring to a Hispanic employee's "own country" and comparing it to "our country" could support a jury finding that the employee was harassed on account of her national origin)" 765 F. Supp. 3d 245, 268.

Indeed, if the Court is inclined to rely on any nonprecedential opinion, then it should look to the well-reasoned decision of *Sumrall v. Ali*, 793 F. Supp. 3d 199 (D.D.C. 2025). There, the U.S. District Court of D.C. held that attacking a Jew because of their connection to the Jewish State of Israel is a discriminatory act and not merely an act of political expression. *Id.* at 208-09.

One court has already rejected the application of *MIT* to a motion to dismiss an employment discrimination and retaliation claims by a Jew who opposed antisemitic, anti-Israeli speech. *See Jaskoll vs. Fairleigh Dickinson University*, Docket No. BER-L-6189-25 (Super. Ct., New Jersey February 13, 2026)(Transcript of February 13, 2026 Motion to Dismiss and Bench Ruling, attached hereto as Exhibit A), at 52:16 – 54:4 (denying motion to dismiss New Jersey Law Against Discrimination ("NJLAD") discrimination and retaliation claims because Plaintiff adequately plead that his opposition to an anti-Israel, antisemitic speech at his workplace protected conduct was expressing his opposition to discrimination against Jews.[5] As the court in *Jaskoll* explained, "Whether the conduct at the Israeli-Palestine event was discriminatory against Jews or political speech is not an appropriate determination at this juncture as no discovery has been completed." Exhibit A, at 53:23-54:1. While Saleh is free to contest Plaintiff's contentions, her disagreement is not basis to dismiss Goldstein's sufficiently-pled complaint. Again, Saleh inappropriately ask

---

[5]The NJLAD is substantively similar to NYSHRL, which was adopted one month prior and even contains identical preamble language. *See, eg., King v. Port Auth. of New York & New Jersey*, 909 F. Supp. 938, 946 (D.N.J. 1995)(citations omitted), *aff'd,* 106 F.3d 385 (3d Cir. 1996). *Compare* N.J. Stat. Ann. § 10:5-3 (discrimination "menaces the institutions and foundation of a free democratic State.") *with* N.Y. Exec. Law § 290 )(same).

this Court to view the facts in the light most favorable to her, the moving party, contrary to the standard for a motion to dismiss.

**B. The Employment Discrimination Claims Do Not Violate the First Amendment to the United States Constitution**

Defendant Saleh argues that application of antidiscrimination law under the circumstances set forth in the complaint would violate the First Amendment of the United States Constitution. Saleh Motion to Dismiss, at 19-22.

Pure political speech may well be considered harassing in the employment context. Eugene Volokh, *Freedom of Speech and Workplace Harassment*, 39 UCLA L. Rev. 1791, 1804 (1992) ("core protected speech can indeed constitute harassment"). An unduly narrow construction would undermine eradicating invidious workplace discrimination, a compelling government interest. *See Garrett v. City Univ. of New York,* No. 24-CV-9710 (VSB)(RWL), 2025 WL 3096550, at *7 (S.D.N.Y. Oct. 10, 2025)(*citing Saxe v. State College Area School District,* 240 F.3d 200, 209 (3d Cir. 2001)).

Indeed, this Court has recognized that Congress extended federal employment discrimination protections to educational institutions, explicitly recognizing the importance of ensuring academics have an equal opportunity to advance their careers and research unencumbered by workplace discrimination. *See Garrett v. City Univ. of New York*, No. 24-CV-9710 (VSB) (RWL), 2025 WL 3096550, at *7 (S.D.N.Y. Oct. 10, 2025)(*citing University of Pennsylvania v. Equal Employment Opportunity Commission*, 493 U.S. 182, 190, 110 S. Ct. 577, 582 (1990)).

There is a difference between speech in the public square and speech within the workplace. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 432, 112 S. Ct. 2538, 2569, 120 L. Ed. 2d 305 (1992), 402 n4 and 432 (distinguishing between "cross burning ... directed ... to a single African-American family trapped in their home ..., a crude form of physical intimidation" and "[b]urning a cross at a

*political rally* [which] would almost certainly be protected expression") (Stevens, J., concurring).

Moreover, as held by this Court in *Garrett v. City Univ. of New York*, No. 24-CV-9710 (VSB) (RWL), 2025 WL 3096550, at \*14 (S.D.N.Y. Oct. 10, 2025), "allegations that targeted statement was false and defamatory diminished the constitutional protection it might otherwise receive and exacerbated its humiliating effect, and was actionable under Title VII".

Thus, in *Landau*, 2025 WL 1796473, at \*11, the "outlandish claim that [student-plaintiff's statement] ... was a contributing factor to the tragic shooting of a Palestinian Haverford student" made in widely-circulated document was actionable under Title VI). *Jew v. University of Iowa*, 749 F. Supp. 946, 961 (S.D. Iowa 1990) ("Free speech and academic freedom considerations might preclude Title VII liability if the ... rumors [that a professor was having a sexual affair with her department head] were true"); *see generally Hustler Magazine*, 485 U.S. at 52 ("False statements of fact are particularly valueless" to public debate and may, in certain circumstance, give rise to civil liability).

It is well settled that workplace speech alone can be actionable employment discrimination. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993)("When the workplace is permeated with discriminatory "intimidation, ridicule, and insult," 477 U.S., at 65, 106 S.Ct., at 2405, that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," *id.,* at 67, 106 S.Ct., at 2405 (internal brackets and quotation marks omitted), Title VII is violated.")

Indeed, as this Court has held, antidiscrimination law does not permit an employer to stand idly by when speech, like Saleh's false and defamatory complaint about Goldstein, "isolated or targeted individual[s]" in the protected class" *See Garrett v. City Univ. of New York*, No. 24-CV-9710 (VSB)(RWL), 2025 WL 3096550, at \*10 (S.D.N.Y. Oct. 10, 2025)(denying dismissal of

Jewish professor's hostile workplace claim where protestors gathered at CUNY Hunter main entrance and chanted, "Hillel [Jewish student center] can go to Hell" and "Hillel, what do you say, how many killers did you feed today?).

Moreover, Saleh's other antisemitic speech, such as her endorsement of the antisemitic petition, is relevant evidence to proving her aiding and abetting of the employment discrimination. *See Weinberg v. Nat'l Students for Just. in Palestine*, No. 2:25-CV-03714-MCS-JC, 2026 WL 184302, at *11 (C.D. Cal. Jan. 20, 2026)("Plaintiffs are entitled to rely on [defendant's] speech acts as evidence tending to prove the elements of their § 1985(3) claims, such as whether [defendant] acted with an improper intent or was motivated by a discriminatory animus. ) *See Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) (denying motion to dismiss Sect. 1985 conspiracy to deprive Jewish plaintiffs of their 13th amendment right to access public accommodations during anti-Israel encampments)("The First Amendment ... does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent."); *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 208 (3d Cir. 2001) ("[W]e see no constitutional problem with using an employer's offensive speech as evidence of motive or intent ....")(denying motion to dismiss).

Indeed, bad faith complaints of discrimination can be subject to defamation claims under state law. *See Herlihy v. Metro. Museum of Art*, 214 A.D.2d 250, 257, 633 N.Y.S.2d 106, 110 (1995) ("statutory provisions prohibiting retaliatory conduct do not confer, upon bad-faith complainants making false discriminatory-related charges, absolute immunity from defamation actions that may arise out of those charges.")

The discussion in a sister 2nd Circuit district court in *Equal Emp. Opportunity Comm'n v. Day & Zimmerman NPS, Inc.*, 265 F. Supp. 3d 179, (D. Conn. 2017) is instructive:

> Employment discrimination statutes, in prohibiting discrimination against
> employees in protected classes, sometimes prohibit conduct that involves speech,

such as "discriminatory intimidation, ridicule, and insult," in a workplace environment that "is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (discussing hostile work environment claims under Title VII) (internal quotation marks omitted). [Defendant] points to no authority suggesting that the First Amendment protects employers from this type of liability. *See also Wisconsin v. Mitchell*, 508 U.S. 476, 487, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993) (noting in dicta that the Supreme Court had "cited Title VII ... as an example of a permissible content-neutral regulation of conduct"); *see also Baty v. Willamette Indus., Inc.*, No. 96-2181-JWL, 1997 WL 292123, at *7 (D. Kan. May 1, 1997) ("[S]imilar to blackmail or threats of violence, discriminatory conduct in the form of a hostile work environment are not protected speech; the regulation of discriminatory speech in the workplace constitutes nothing more than a time, place, and manner regulation of speech, which does not offend constitutional principles; the victims of workplace discrimination are captive audiences and the free speech guarantee permits great latitude in protecting captive audiences; if the speech at issue is treated as fully protected, the government's compelling interest in eradicating discrimination in the workplace permits such regulation; other First Amendment rights, such as the Freedom of Association, have bowed to narrowly tailored remedies designed to advance the government's compelling interest in eradicating discrimination in the workplace ... as long as it has been determined that a harm has been and continues to be inflicted on identifiable individuals and the context of the speech is the heart of the cause of action, the First Amendment has not been violated")

*Id.* at 194 (explanation added).

## C.    The Discrimination Claims Allege Actionable Harassment Not Merely a Trivial Inconvenience

Defendant Saleh argues that her conduct, even if discriminatory, did not allege actionable harassment because her false and defamatory complaint against Mr. Goldstein to his employer that he was racist and anti-Muslim was a normal part of the process of resolving disputes and her signature on an anti-Israel, anti-Zionist and antisemitic petition was a general public statement "not directed at Jews or Israelis per se," which cannot be construed as any more than an inconvenience,  Saleh Motion to Dismiss, at 23.[6]

---

6 Defendant Saleh does not cite any caselaw in support of this argument. Accordingly, the Court should disregard deny this part of her motion to dismiss as it is not compliant with Local Rule

However, this Court has stated, "circulating false accusations about an employee that implicate a protected characteristic can be actionable harassment." *See Garrett v. City Univ. of New York*, No. 24-CV-9710 (VSB) (RWL), 2025 WL 3096550, at \*15 (S.D.N.Y. Oct. 10, 2025)(internal quotations omitted)(allegation that student group sent false and defamatory email accusing Jewish professor of falsely portraying students as antisemites actionable under Title VII). *See also Noviello v. City of Boston*, 398 F.3d 76, 93 (1st Cir. 2005)(denying summary judgement to employer on employee's hostile workplace claim based in part on a coworker's false accusation about plaintiff), *abrogated on other grounds as recognized by Stratton v. Bentley Univ.*, 113 F.4th 25, 43 (1st Cir. 2024);

Indeed, this Court in *Garrett* found that the student group's false and defamatory statement that the Jewish professor falsely portrayed students as antisemites was more severe than CUNY's discriminatory denial of Jewish students' request to display Hannukah menorahs but permitting Ramadan celebration, which was not individualized "intimidation, ridicule, and insult." *Garrett*, at \*20.

Moreover, Ms. Saleh's subsequent signature on the anti-Israel, anti-Zionist and antisemitic petition, pejoratively characterizing Professor Goldstein's request for education on Jewish indigeneity in the Land of Israel as a "Zionist tactic," is both evidence of her contribution to the hostile workplace, and relevant evidence of her animus towards Jews and Israelis in her decision to falsely defame Professor Goldstein to his employer and colleagues.

### III.    The Well Plead Complaint States Claims for Retaliation

To state a claim for retaliation under the New York State Human Rights Law, a plaintiff

---

7.1(a)(2) (requiring all motions to include a memorandum of law "setting forth the cases and other authorities relied upon in support of the motion").

must show that (1) he was engaged in a protected activity, (2) his employer was aware that he participated in such activity, (3) he suffered an adverse employment action based upon his activity, and (4) there is a causal connection between the protected activity and the adverse action. *See Herskowitz v. State*, 222 A.D.3d 587, 587–88, 204 N.Y.S.3d 1, 3 (1st Dept. 2023)(citations omitted). Plaintiffs in retaliation cases are held to a lenient notice pleading standard and are generally afforded deference at the pleading stage. 222 A.D.3d at 588.

### A.    Defendants' Antisemitic Workplace Exhibit Was Not Protected by the First Amendment From Employment Discrimination Claims

Saleh argues that the retaliation claims should be dismissed because Plaintiff Goldstein did not oppose conduct prohibited by law.  Saleh Motion to Dismiss, at 25-28. Defendant argues that Goldstein's complaints to the press about defendants' antisemitic poster display do not qualify as protected opposition to unlawful harassment because she believes was protected by the First Amendment.  Saleh Motion to Dismiss, at 27.  However, as explained above in Part II.B, Defendants' antisemitic workplace exhibit was not protected from employment discrimination claims by the First Amendment.

### B.    The Complaint Adequately Alleges Conduct by Defendant Saleh Likely to Deter A Reasonable Person From Participating in Protected Activity

Defendant Saleh argues that Mr. Goldstein's retaliation claims should be dismissed because the complaint failed to adequately allege that Defendant Saleh's conduct was likely to deter a reasonable person from participating in protected activity.  Saleh Motion to Dismiss, at 28-30. In support of her argument, Saleh cites an inapposite case reviewing a post-discovery, post-deposition summary judgment motion, *Reichman v. City of New York*, 179 A.D.3d 1115, 117 N.Y.S.3d 280 (2nd Dept. 2020).

14

Moreover, Defendant Saleh omits the portion of *Reichman* that expressly states that under the New York Human Rights Law, "In the context of a case of unlawful retaliation, an adverse employment action is one which *might have dissuaded* a reasonable worker from making or supporting a charge of discrimination" *See Reichman v. City of New York*, 179 A.D.3d 1115, 1119, 117 N.Y.S.3d 280 (2020).

Taking all of Plaintiff's allegations as true, as is required at the motion to dismiss stage, the specter of being placed under official investigation by one's employer in response to opposition to workplace antisemitism certainly "might dissuade" a reasonable employee from opposing that antisemitism. Being placed under employer investigation means one's hard-won tenure, livelihood and reputation in thrown into jeopardy, let alone the sullying of one's reputation amongst one's colleagues undertaking the investigation.

Multiple courts within the Second Circuit have found that commencement of an investigation, even without attendant negative consequences, is sufficient to establish an adverse employment action for purposes of retaliation claims. *See, e.g., O'Neal v. State Univ. of N.Y.,* No. 01–CV–7802, 2006 WL 3246935, at * 13 (E.D.N.Y. Nov. 8, 2006); *cf. Eldridge v. Rochester City Sch. Dist.,* 968 F.Supp.2d 546, 560, No. 12–CV–6365L, 2013 WL 5104279, at *11 (W.D.N.Y. Sept. 13, 2013))(*as cited in Weber v. City of New York*, 973 F. Supp. 2d 227, 270 (E.D.N.Y. 2013)(commencement of investigation into inappropriate racial comments might dissuade a reasonable worker from making or supporting a charge of discrimination); *cf Ray v. Henderson*, 217 F.3d 1234, 1238 (9th Cir. 2000)(reversing grant of summary judgement to employer on retaliatory harassment based in part on two false accusations against employee); *Aviles v. Cornell Forge C*o., 183 F.3d 598, 606 (7th Cir. 1999)(reversing grant of summary judgement to employer on retaliation claim because employer's false report to police that plaintiff "could certainly be

construed as a retaliatory action meant to discourage [plaintiff] from pursuing his [Title VII national origin discrimination] claim").

As this Court held in *Garrett v. CUNY*, No. 24-CV-9710 (VSB) (RWL), 2025 WL 3096550, at \*15 ("circulating false accusations about an employee that implicate a protected characteristic can be actionable harassment."

Moreover, a causal connection exists between Goldstein's protected activity and Saleh's adverse employment action due to the close proximity in time between them. *See Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 216 (2d Cir.2001) (holding that the causal connection required for a retaliation claim may be established indirectly by showing that the protected activity was closely followed in time by the adverse action).

### C. Plaintiff Adequately Alleged that His Opposition to the Discriminatory Workplace Program Was Based On a Good Faith, Reasonable Belief That It Was Unlawful

Defendant Saleh argues that Mr. Goldstein's retaliation claims against her should be dismissed because Mr. Goldstein "cannot put forward" a good faith, reasonable belief that Saleh's false and defamatory complaint that he was an anti-Muslim racist, or her sponsorship of an anti-Israel petition constituted unlawful discrimination. Saleh Motion to Dismiss, at 30-31.

As a preliminary matter, Defendant Saleh gets Mr. Goldstein's retaliation claims backwards. Mr. Goldstein alleges that on March 15, 2023, he publicly opposed Defendants' antisemitic and discriminatory exhibit by notifying the media, which resulted in a news article published the next day entitled 'Horrifying, Antisemitic, Campus-Sponsored' Programs at CUNY; Students Get College Credit for Participating," which quoted Mr. Goldstein discussing the discriminatory and upsetting nature of Defendants' antisemitic exhibits and events. TAC, at paras 60-64.

Mr. Goldstein alleges that in response to his public opposition to the antisemitic display at his workplace, Defendant Saleh retaliated against him on March 20, 2023, by filing a baseless discrimination charge accusing him of Islamophobia and racism. TAC, at 144-145.  Thus, Mr. Goldstein's retaliation claim does not turn on whether he plausibly alleged that he had a good faith belief that Defendant Saleh's subsequent March 20, 2023 facially baseless, false and defamatory complaint accusing him of Islamophobia and racism was unlawful (which it was) or that her sponsorship of the antisemitic petition as a CUNY employee contributed to the unlawful hostile workplace discrimination he experienced (which it did).

To survive Defendant Saleh's motion to dismiss his retaliation claim, Mr. Goldstein need not prove that his March 15, 2023, complaints regarding Defendants' horrifying workplace antisemitic exhibit and events had merit, but only plausibly allege that his complaint was motivated by a "good faith, reasonable belief that the underlying employment practice was unlawful." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (citation and internal quotation marks omitted).

Plaintiffs in retaliation cases are held to a lenient notice pleading standard and are generally afforded deference at the pleading stage. *See Herskowitz v. State*, 222 A.D.3d 587, 588, 204 N.Y.S.3d 1, 3 (1st Dept. 2023)(reversing dismissal of retaliation claim brought by employee witness to employer's sexual harassment, where employee was subjected four months later to questioning regarding employee's alleged discriminatory conduct); *Seemungal v. New York State Dep't of Fin. Servs*., 222 A.D.3d 467, 467, 202 N.Y.S.3d 22, 23 (1st Dept 2023)(reversing dismissal which improperly required plaintiff on motion to dismiss to set forth sufficient evidence to prove that defendants' actions were rooted in discrimination). . Minimal factual allegations are required to establish good faith reasonable belief at the pleading stage. *See, eg., Emengo v. State*, 143

17

A.D.3d 508 (1ˢᵗ Dept. 2016)(reversing dismissal of retaliation claim because temporal proximity between complaint of discrimination and adverse action was sufficient to support inference of retaliation at the pleading stage).

Defendant Saleh claims that Mr. Goldstein could not have a good faith belief that Defendant Saleh's conduct, in this case, her retaliatory false and defamatory accusations against him, were motivated by race or constituted unlawful conduct, citing an article in The Guardian publication by a person claiming to be one of the authors of the International Holocaust Remembrance Association definition of antisemitism asserting that it was never meant to be a campus hate speech code. Saleh Mot. To Dismiss, at 31.

Once again, Defendant Saleh attempts to conflate the separate issue of hate speech in the public square with the employment discrimination and retaliation at issue herein. People are generally free in America to spew whatever antisemitic or discriminatory speech they adhere to in the public square with impunity under the First Amendment. For example, Nazis were allowed to march through the streets of a town heavily populated by Holocaust survivor,[7] and the Klu Klux Klan may presumably burn crosses in public squares, as noted by Justice Stevens above. However, when an employer posts Swastikas (itself the sign of a political party), burns a cross or hangs a noose in the workplace, he may face employment discrimination liability. Accordingly, Defendant Saleh's misguided motion to dismiss on this grounds must be denied.

**IV.    Defendant Saleh Failed to Adequately Respond to Goldstein's Allegations of Anti-Semitic Discrimination**

Defendant Saleh admits that a litigant may show employer fault and causation by failing

---

[7]*See generally Nat'l Socialist Party of Am. v. Vill. of Skokie*, 432 U.S. 43, 44, 97 S. Ct. 2205, 2206, 53 L. Ed. 2d 96 (1977)

to address discriminatory behavior adequately after the issue is brought to their attention.  Saleh Mot. To Dismiss, at 32. However, Defendant Saleh argues, in a somewhat confusing fashion, that Mr. Goldstein's request for corrective information on Jewish indigeneity in Israel was barred by the Constitution, *citing Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. Of Boston*, 515 U.S. 557, 572-573 (1995); *303 Creative LLC v. Elenis*, 600 U.S. 570, 589 (2023) and *Landau*. Saleh Motion to Dismiss, at 32-34.

However, none of these three cases are relevant because none of them concern employment discrimination, nor do they speak to appropriate employer response to address discriminatory behavior.   Accordingly, Defendant Saleh's motion to dismiss Mr. Goldstein's discrimination claims on the basis of these cases should be denied.

## V.     The Complaint Adequately Alleges Discrimination Under the New York City Civil Rights Law

Defendant Saleh argues that Mr. Goldstein's discrimination claim under the New York City Civil Rights Law should be dismissed because she was unable to find a case finding liability where no liability was found under federal, New York State or New York City Human Rights laws. Saleh Motion to Dismiss, at 34-35. However, for the reasons stated above, Mr. Goldstein's discrimination and retaliation claims under New York State and New York City Human Rights Laws are well plead.   Defendant Saleh's inability to find caselaw is not grounds for dismissal of a well-plead complaint.   Accordingly, Defendant Saleh's motion to dismiss on this ground should be denied as well.

## VI.     Plaintiff States a Claim Against Defendant Saleh For Violating His Rights to Due Process and Equal Protection Under Section 1983

Defendant Saleh argues that she cannot face liability for procedural due process and equal protection violations under Section 1983 because 1) she was not involved in the investigation of

19

her own fabricated complaint, and 2) she was not acting under color of state law; and 3) he failed to allege sufficiently severe adverse consequences. Saleh Motion to Dismiss, at 35-37.

However, it is not necessary for Defendant Saleh to have been the decision maker as to when and to what extent Mr. Goldstein was notified of Defendant Saleh's false and defamatory claim against him. *See Nesathurai v. Univ. at Buffalo,* 23 A.D.3d 1070, 1071, 804 N.Y.S.2d 195 (2005). Rather, "[i]t is enough that [defendant] is a willful participant in joint action with the State or its agents" (*Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185; *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142).

Defendant Saleh argues that Mr. Goldstein has not put forward a non-conclusory basis for suggesting that Defendant Saleh was involved with the procedural due process problem of delay in notification to Mr. Goldstein of her false and defamatory complaint or its investigation. As a preliminary matter, Mr. Goldstein pleaded additional procedural due process infirmities with the investigation of the fabricated complaint, such as 1) the refusal to provide a copy of her complaint during the pendency of the investigation and 2) the perpetuation of the investigation for 17 months from March 20, 2023 through August 12, 2024. *See* TAC, at paras. 282, 284.

However, Defendant Saleh's unsworn protestations in her motion to dismiss that she was not involved in the investigation does not conclusively establish this as a fact. Rather, Mr. Goldstein is entitled to an opportunity for discovery on the issue of her participation in the alleged discriminatory conduct. *See* Nesathurai v. Univ. at Buffalo, 23 A.D.3d 1070, 1071, 804 N.Y.S.2d 195, 196 (2005)(defendant's affidavit stating that he "did not participate in any decision-making regarding plaintiff's employment status" did not conclusively establish that he did not participate in conduct or conversations leading to such decision-making)(citations omitted).

Defendant Saleh further cites the wholly inapposite *Pitchell v. Callan*, 13 F.3d 545, 548

20

(2d Cir. 1994) in support of the proposition that acts of officers in the ambit of their personal pursuits are not acting under color of state law as required to state a Section 1983 claim. However, *Pitchell* concerned Section 1983 claims brought against an off-duty police officer, who while drunk in his own home, used his own personal weapon to shoot a guest.

In contrast, the complaint herein alleges that Defendant Saleh, a state employee, was the Coordinator of a center within Defendants' CUNY BMCC Social Justice and Equity Center which sponsored the false, defamatory and antisemitic exhibit at Mr. Goldstein's workplace.  TAC, at paras. 48 – 52.  The complaint further alleges that within days after Mr. Goldstein publicly opposed this discriminatory exhibit at his workplace, Defendant Saleh retaliated against him by fabricating a false and defamatory complaint against him, as a result of which he was placed under investigation for 17 months. TAC, at 144, 150.

Defendant Saleh was indisputably a state actor to the extent that she was involved with sponsoring Defendants' antisemitic and discriminatory workplace program.  It would be premature to dismiss the Section 1983 claim against her for the investigation that followed her retaliatory false and defamatory complaint based on her protestations that she was merely acting in her personal capacity as a graduate student and "educator" when she filed it, prior to any discovery, when all pleadings must be presumed to be true.

Moreover, the United States Supreme Court has held that to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting see "under color" of law for purposes of § 1983 actions. *See Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S. Ct. 183, 186, 66 L. Ed. 2d 185 (1980)(reversing dismissal of Section 1983 claims against private parties alleged to have conspired

21

with a judge to corruptly enjoin the production of minerals from oil leases, resulting in a deprivation of property without due process of law).

Saleh further argues that Mr. Goldstein's allegation that Defendant's prolonged investigation of her facially baseless complaint occurred because of his Jewish and Israeli identity was unduly conclusory and does not establish causation, and citing *Iqbal*, and that there was no indication that the complaint was not resolved in the normal time necessary. Saleh Mot. to Dismiss, at 36-37. However, this is precisely what Goldstein alleged in his Third Amended Complaint regarding Defendants' discriminatory weaponization of the investigation process against Jews. *See* TAC, at paras. 151-173; 200-206. Apparently, Saleh did not read the Third Amended Complaint.

Defendant Saleh argues in passing that Mr. Goldstein does not identify any adverse consequences that would warrant relief under the Due Process Clause, such as confiscation of a property interest in the form of the loss of his job, citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). Saleh Mot. to Dismiss, at 37. However, Mr. Goldstein alleges that Defendants' prolonged and flawed investigation of Defendant Saleh's complaint, caused him emotional distress, psychological damages, loss of career opportunities, reputational damages, and economic injuries, and that he was not appointed to a committee that would render him eligible for promotion which on information and belief would result in increased compensation. TAC, at 105-117, 289. Mr. Goldstein further alleged that he has a liberty interest in his employment and professional reputation. TAC, at 286. Accordingly, Defendant Saleh's motion to dismiss the Section 1983 due process claim on the grounds that Mr. Goldstein has not alleged adverse action should be denied.

22

## CONCLUSION

For the reasons set forth above, Plaintiff Goldstein respectfully requests that this Court deny Defendant Saleh's motion to dismiss in its entirety.

Respectfully submitted,

National Jewish Advocacy Center, Inc.

By:     */s/ Abra Siegel*
Abra Siegel
3 Times Square. Suite 512
NY, NY 10036
(312) 487-1281
abra@njaclaw.org

*Attorneys for Plaintiff Avraham Goldstein*

23

**Certification**

I hereby certify that the enclosed brief is produced using 12-point Times New Roman type and the total number of words in the foregoing document including footnotes 8,361 words according to the "Word Count" function of Microsoft Word, the word processing system used to prepare the document, and thus that the document complies the word count limit set forth not to exceed 8,750 words, exclusive of the caption, table of contents, table of authorities, and signature block.

Dated: March 2, 2026.

By: /s/Abra Siegel
Abra Siegel

24