**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Avraham Goldstein,

     *Plaintiff*

     v.                       **Civil Action No. 1:25-cv-475**

City University of New York, et. al.,

     *Defendants*

## DEFENDANT NADIA SALEH'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

COMES NOW Defendant Nadia Saleh and hereby replies to Plaintiff's

response (herein "Response") to her motion to dismiss (ECF Dkt. No. 110).[1]

### ARGUMENT

**I)** **The First Amendment's shield is stronger – not non-existent – on college campuses.**

Remarkably, Plaintiff appears to suggest that because universities are

workplaces, the First Amendment does not shield potentially actionable speech –

---

1    Undersigned Counsel acknowledges that we failed to properly provide a table of contents, table of authorities, and certification with the prior motion filing as required by this Court's Individual Rules and Practices R. 5A. Counsel is not infallible: we regret the error and have sought to ameliorate it by including these materials as a contemporaneously filed exhibit – though we note the oddity of Plaintiff's complaint about it, given that Plaintiff made no effort in the intervening <u>five months</u> to express any frustration.

rather than dramatically increasing the scope of the protection. But as already explained, there is no "harassment exception" to the First Amendment. While it is true that some speech in the workplace context, including a university, can be actionable and that courts have struggled to the find the right balance, it is unambiguous that universities are entitled to the highest level of protection under the First Amendment – not none. Rosenberger v. Rector, 515 U.S. 819, 835 (1995) ("...That danger [of chilling of individual thought and expression] is especially real in the University setting...For the University, by regulation, to cast disapproval on particular viewpoints of its students risks the suppression of free speech and creative inquiry in one of the vital centers for the Nation's intellectual life, its college and university campuses.")

Plaintiff also appears to ignore this obvious fact even where it is articulated in cases Plaintiff cites favorably: for example, Plaintiff interprets Gartenberg to support his claim that criticism of Israel is potentially indicative of anti-Semitism (addressed infra), but ignores that the same case clearly limits its holding to speech that that court interpreted not to be reasonably designed to communicate a message on a college campus, i.e. vandalism. No argument is made here that Ms. Saleh's alleged speech acts were vandalism. To the contrary: Ms. Saleh's speech acts are the kind that entitled to the highest protection.

*A Note About "Defamation"*. Plaintiff appears to understand that speech about Israel and its supporters generally is protected, and therefore relies on portraying Ms. Saleh's protected speech as "defamatory" – either about Israel (because he disagrees with it) or about him (because he insists he is not a racist). But even if defamation could stand in for discrimination (discussed infra), Plaintiff's insistence that opinions he disagrees with are defamatory has no basis in law. Insofar as Plaintiff argues that being called a racist is "defamatory," he is wrong as a matter of law. Cooper v. Templeton, 629 F. Supp. 3d 223, 235 (S.D.N.Y. 2022) ("...It is well-established that an accusation of bigotry is a protected statement of opinion, rather than a defamatory statement of fact capable of being proven true or false."). The same, of course applies to Israel, and in any case, even assuming statements made about Israel being a colonialist apartheid regime are factual in nature and untrue rather than political opinion, they do not constitute defamation against Plaintiff and, moreover, are entitled to First Amendment protection as commentary about a matter of public concern about official conduct. See, e.g. New York Times Co. v. Sullivan, 376 U.S. 254, 271-272 (1964) (Rejecting claims of defamation over condemnation of government conduct, even where it included factual inaccuracies or harmed an official's reputation: "In the realm of religious faith, and in that of political belief, sharp

3

differences arise….To persuade others to his point of view, the pleader, as we know, at times, resorts to exaggeration, to vilification of men who have been, or are, prominent in church or state, and even to false statement. But the people of this nation have ordained in the light of history, that, in spite of the probability of excesses and abuses, these liberties are, in the long view, essential to enlightened opinion and right conduct on the part of the citizens of a democracy...)[2]

## II)   Condemning Israel – or its supporters – for racism is not itself a form of discrimination.

Plaintiff bends over backwards to get around the simple fact that anti-discrimination law requires a nexus: criticizing a Jewish person (or, alternatively, a Jewish state) is simply not enough to indicate that one is criticizing that person (or state) out of religious or national origin bias.[3] Plaintiff is forced to misstate

---

2     We are putting aside the other obvious problem with Plaintiff's crocodile tears about "defamation": that the statements, both about him and Israel, are true. Defendant Saleh maintains that while it is beyond the court's purview because Plaintiff's claims are not actionable in any case, her statements about Israel's racial violence are reasonable and accurate condemnations of racial and religious violence aimed at Muslims, and Plaintiff's reduction of such criticisms to anti-Semitism, indicate racial bias. The absurdity of Plaintiff's belief that opposing racism is racist rather than anti-racist is discussed further in Point II.

3     Plaintiff's amended complaint adds additional references to augment his underlying claim that anti-Zionism is anti-Semitism. We note only that these arguments are redundant of what he has already argued, namely, that Israel's importance and significance to many Jewish people renders some or all opposition to Israel discriminatory – an argument that plainly avoids the necessary nexus.

numerous cases to shore up this bogus argument.

Perhaps most importantly: Plaintiff argues that Ashcroft v. Iqbal – which plainly held that conclusory allegations of discriminatory motive (in that case, against Muslims rounded up after the September 11th Attacks despite committing no wrongdoing) were insufficient under Fed. R. Civ. P. 8 – does not apply to employment law. Plaintiff gets an "F" in Introduction to Civil Procedure: Iqbal changed federal pleading standards across the board – a matter that has been the focus of observation (and, among plaintiffs' lawyers, ire) for years. That settles the case: insofar as Plaintiff has to ignore federal pleading standards to argue discrimination, all of his discrimination claims – including state law claims brought in federal court – fail at the start. That includes other references throughout Plaintiff's motion putting forward an "any cognizable legal theory" or "any set of facts" standard.

Plaintiff goes on to criticize Stand With Us Center v. MIT for allegedly holding that critiquing Israel is never anti-Semitism. But StandWithUs plainly provides clear examples in which criticisms of Israel were indicative of anti-Semitism; it simply holds the uncontroversial maxim that criticism of Israel in and of itself does not meet the threshold due to the "because of" prong. By contrast, allegations that a Jewish person was selectively subjected to criticism, such as

protesters blocking a pathway to Jews but allowing others to pass, were sufficient.

Bizarrely, Plaintiff seems to think that a First Circuit opinion is irrelevant for this

Court's consideration because it is out of circuit. But decisions of any Court of

Appeals are of extremely significant persuasive authority irrespective of whether

or not they are binding. Plaintiff also claims that StandWithUs contradicts Sinai v.

New Eng. Tel. Co., 3 F.3d 471 (1st Cir. 1993). Not so: That case simply holds that

anti-Israeli national origin discrimination and discrimination against Jews are

interchangeable for the purposes of establishing racial discrimination. The case

does not say critiques of Israel, as a political entity, automatically amount to anti-

Israeli or anti-Jewish discrimination, even if the latter two are related. Plaintiff

claims Sumrall v. Ali, 793 F. Supp. 3d 199 (D.C.D. 2025), holds that "attacking a

Jew because of their connection to the Jewish State of Israel is a discriminatory act

and not merely an act of political expression." Also incorrect: Sumrall explicitly

denied that the attack in question was an act of political expression at all. Sumrall

at 209.[4]

---

4    Of course, we question the fact-finder's conclusion (confusion?) in that case, suggesting that a battery by a pro-Palestine protester against a pro-Israel counter-protester was discriminatory because the battery consisted of yanking on the victim's Israeli flag, which features a Jewish religious symbol, and because battery is not a legitimate form of political activity. But the case was about a physical confrontation between individuals from conflicting political camps who disagreed over the Israeli firebombing of Gaza, and the Jewish Star of David was present on the battery victim's flag only insofar as that is what is on the Israeli flag and the victim sought to

Plaintiff selectively cites language in Gartenberg to argue that critiques of Israeli colonialism plausibly establish unlawful discrimination. Plaintiff also cites Garrett to claim "defamatory" speech can infer anti-Semitism. Plaintiff ignores relevant parts of both rulings that would require dismissal of this case on First Amendment grounds, i.e. because the speech alleged here was not vandalism or public defamation.

Gartenberg's language is admittedly confused. On the one hand, Gartenberg I recognized that visceral condemnation of Israel and its violence as "colonialism," "imperial violence," justification of Hamas' armed attacks on Israel, etc. failed to establish liability without "factual support for [the] assertion that any of these messages were intended to target particular Jewish students"; it found other activities to potentially infer antisemitism where the court read them to be making comments about "Jews as a class". Similarly, Garrett limited liability to instances in which Jewish students and professors were subject to personalized harassment. In that sense, Gartenberg and Garrett are no different from any of the other cases cited by Defendant in her motion, establishing that condemnation of Israel without

show her political support for Israel's military campaign. That a political flag includes religious symbols or that political disagreement can be expressed in unlawful ways does not, in our view, explain how such alleged facts amount to discriminatory motive. Nonetheless: irrespective of the reasoning, the fact remains that the court concluded that the battery was racially motivated instead of politically motivated (rather than both, as Plaintiff claims), all based on circumstances not alleged here.

targeting Jews or Israelis based on their identity is insufficient to create a plausible inference of anti-Semitism.[5]

But we acknowledge that Gartenberg and Garrett can be read differently: that where speech fits one of several narrow exceptions to the First Amendment – such as defamation, vandalism, etc. – anti-Israel speech, even where it condemns the racism of colonialism, could itself be inferred to be racist.[6]

---

5    Defendant cited StandWithUS Ctr. v. MIT, Landau, Gartenberg I and II, and Garrett; we would add to this list: Sussman et al v. Massachusetts Institute of Technology et al, 1:25-cv-11826-RGS (D. Mass 2025) Docket No. 75 (rejecting similar anti-Semitism claims); Eyal Yakoby v Trustees of the Univ. of Pennsylvania, 2025 US Dist LEXIS 103709, No. 23-4789 at *18-19 (E.D.Pa June 2, 2025) ("At worst, Plaintiffs accuse Penn of tolerating and permitting the expression of viewpoints which differ from their own");  Am. Assn. of Univ. Professors v Rubio, 802 F Supp 3d 120, note 17 (D. Mass 2025)("Criticisms of the State of Israel are not anti-Semitism, they're political speech, protected speech"); Canel v Art Inst. of Chicago, 2025 US Dist LEXIS 30309 at *24-25 (N.D. Ill. Feb. 20, 2025, No. 23 CV 17064) ("[T]he banners and flyers reflect political points of view critical of the Israeli government.... From these allegations...the Court cannot also conclude that the banners and flyers represent discriminatory harassment of plaintiff on the ground of her Jewish or Israeli identities");  Gerwaski v Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ., No. 2:24-cv-00985-APG-MDC, 2025 US Dist LEXIS 84645, at *21-22 (D. Nev. May 5, 2025) ("All the conduct alleged appears to take place in public areas and involves speech on the conflict between Israel and Palestine and UNLV's response to that conflict");  Newman v. Point Park Univ., No. 2:20-cv-00204, 2022 U.S. Dist. LEXIS 60722, at *78-79 (W.D. Pa. Mar. 31, 2022) ("...Against that backdrop, Plaintiff has not shown that Defendant has subjected her to an objectively hostile work environment by its not suppressing, or otherwise protecting Plaintiff from, the personal views and academic interests of some of Defendant's professors and students related to these geopolitical topics").

6    Jaskoll v. Farleigh Dickinson University, Docket No. BER-L-6189-25

8

Numerous courts have already found this reasoning to be legally meritless. But we also add that such conclusions are deeply troubling. For example, in Gartenberg, the court concluded – reasonably – that language targeting Jews as a class could be construed as discriminatory; but the language in question consisted entirely of a poster display containing allegations that Israel banished Palestinians to Gaza, while Jewish settlers were permitted or encouraged to settle in their place.[7] Instead of recognizing such commentary as an allegation of racism, Gartenberg compared such language to anti-immigrant racist rhetoric telling a Hispanic employee to go back to "her country". But condemning the forced displacement of one group in favor of the settlement of another does not, on its own, suggest any discriminatory inference about the race, nationality, or identity of either party: it is a condemnation of racism, and ironically, supporting such colonial racism was the basis of the university discrimination claim in Rodriguez (see ECF Dkt. No. 82 at 19-20). We will not belabor the argument about what we

_____

(Super. Ct., New Jersey 2026) goes further in not even requiring an exception; we mention it only in passing because it has no binding relevance as a state case from New Jersey, is subject to a lower pleading standard, and articulates no explanation for why it drew the conclusion it did when denying a motion to dismiss over anti-Israel speech as anti-Semitism.

[7]    See, e.g. Walid Khalidi, All That Remains: The Palestinian Villages Occupied and Depopulated by Israel in 1948 (Institute for Palestine Students 1992) (meticulously documenting the destruction of four hundred villages in nascent Israel, their settlement by Israelis and Jews, and the displacement of their residents to other countries or places, including Gaza).

consider straightforward: condemnations of racial violence do not create a reasonable inference of racism.

### III) Plaintiff Fails to Plead State Action

Where Plaintiff's 14th Amendment claims are premised entirely on the investigation of his complaint, Plaintiff cannot allege state action simply by making a conclusory allegation that filing a complaint constitutes joint action: such a complaint, without more, is insufficient to establish joint action, irrespective of whether unrelated parts of Plaintiff's complaint (e.g. the petition) constituted state action. See, e.g. Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268 (2d Cir. 1999) (filing complaints with police is insufficient to establish joint action).

Respectfully submitted this 31st Day of March, 2026.

/s/ Amith Gupta, Esq.
NY Bar Reg. # 5599139
American Trial Law Litigators, LLC
925B Peachtree St. NE #2151
Atlanta, GA 30309
(408) 355-5782
amithrgupta@gmail.com
Attorney for Defendant Nadia A. Saleh

Jonathan Wallace
PO #728
Amagansett NY 11930
(917) 359-6234
jonathan.wallace80@gmail.com
Attorney for Defendant Nadia A. Saleh

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing

DEFENDANT NADIA SALEH'S REPLY TO PLAINTIFF'S RESPONSE IN

OPPOSITION TO MOTION TO DISMISS to the Clerk of Court and all counsel of

record via the ECF system.

This 31st Day of March, 2026.

/s/ Amith Gupta, Esq.
NY Bar Reg. # 5599139
American Trial Law Litigators, LLC
925B Peachtree St. NE #2151
Atlanta, GA 30309
(408) 355-5782
amithrgupta@gmail.com
Attorney for Defendant Nadia A. Saleh